CHARLES WILLIAMS et al., Appellants, *v.* MICHAEL J. QUILL, as President of Transport Workers Union of America, et al., Respondents.

Argued January 5, 1938; decided January 18, 1938.

*Nathan W. Math* for appellants. A " closed shop " provision generally is valid, but when it deprives one not only of his employment for refusal to join a particular labor union, but also all likelihood of obtaining similar employment in a particular community, then it becomes the exception and is invalid and against public policy. (*Curren* v. *Galen,* 152 N. Y. 33; *McCord* v. *Thompson-Starrett Co.,* 129 App. Div. 130; 198 N. Y. 587; *Jacobs* v. *Cohen,* 183 N. Y. 208; *American Steel Foundries* v. *Tri-City Central Trades Council,* 257 U. S. 184; *Peekskill Theatre, Inc.,* v. *Advance Theatrical Co.,* 206 App. Div. 138.) Subdivision 2 of section 340 of the General Business Law (Cons. Laws, ch. 20), as interpreted by the

court below, is in violation of and repugnant to the Constitution of the United States. (*Duplex Co.* v. *Deering*, 254 U. S. 443; *Cotting* v. *Kansas City Stock Yards Co.*, 183 U. S. 79; *American Steel Foundries* v. *Tri-Cit*ʲ *C. T. Council*, 257 U. S. 184.) Paragraph 5 of section 704 of the Labor Law (Cons. Laws, ch. 31) does not approve or sanction a closed shop agreement between a union and a company employer monopolistic in character, to deprive an individual of his right to labor. (*National Labor Rel. Bd.* v. *Jones & Laughlin S. Corp.*, 299 U. S. 533; *Virginian Ry. Co.* v. *System Federation*, 299 U. S. 529.)

*Harry Sacher* for Michael J. Quill, as President of Transport Workers of America, respondent. A closed shop agreement embracing an entire trade or business whose primary object is not the discharge of non-union members but the advancement of the interests of all employees is lawful. (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260; *Kissam* v. *United States Printing Co.*, 199 N. Y. 76; *Mills* v. *United States Printing Co.*, 99 App. Div. 605; *Grassi Contracting Co.* v. *Bennett*, 174 App. Div. 244; *National Protective Assn.* v. *Cumming*, 170 N. Y. 315.) The employees can achieve equality of bargaining power with their employers only through the closed shop. (*Interborough Rapid Transit Co.* v. *Lavin*, 247 N. Y. 65.) The agreement is sanctioned by paragraph 2 of section 340 of the General Business Law, which expressly exempts agreements made by labor unions from the prohibitions against monopoly; and that exemption is constitutional. (*American Fur Mfrs. Assn.* v. *Assoc. F. C. & T. Mfrs.*, 161 Misc. Rep. 246; 251 App. Div. 708; *International Harvester Co.* v. *Missouri*, 234 U. S. 199; *Barns* v. *Dairymen's League Co-operative Assn., Inc.*, 220 App. Div. 624.)

*Sigourney B. Olney, W. Harry Sefton* and *George D. Yeomans* for New York Rapid Transit Corporation et al., respondents. Section 340 of the General Business

Law, forbidding monopolies and restraints of trade, expressly exempts labor unions from the provisions of the act. (*National Protective Assn., Inc.,* v. *Cumming,* 170 N. Y. 315; *Jacobs* v. *Cohen,* 183 N. Y. 207; *American Fur Mfrs. Assn.* v. *Assoc. F. C. & T. Mfrs.,* 161 Misc. Rep. 246; 251 App. Div. 708; *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260; *Mills* v. *United States Printing Co.,* 99 App. Div. 605.) The "closed shop" provision is authorized by chapter 443 of the Laws of 1937, enacting article 20 of the Labor Law (Cons. Laws, ch. 31). (*Sherman* v. *Abeles,* 265 N. Y. 383.)

CRANE, Ch. J. The counsel in this case, with commendable frankness, have narrowed the question to be decided to a single point. The contract which the defendants entered into, pursuant to section 704, subdivision 5, of the Labor Law (Cons. Laws, ch. 31), is conceded to be legal, except as to the New York Rapid Transit Corporation and the other defendants, and only illegal as to them because they furnish the only labor market locally for the plaintiffs.

After an election held among the employees of the defendant corporations on July 31, 1937, pursuant to the said Labor Law, the Labor Board certified that the defendant Transport Workers Union of America was selected as representative for collective bargaining in the eleven groups of the defendant corporations' employees covered by the contract thereafter made. After long negotiations and threatened strikes the said Transport Workers Union and the defendant corporations made a contract which in this case has been attacked as being illegal because of provision No. 6. It reads:

" 6. The parties of the first part will not, during the term of this agreement, employ any employe in the groups represented by the parties of the second part to which this agreement applies who is not, or who does not, within one month after his employment, become and

remain a member in good standing of the Transport Workers Union of America: and all present employes of the groups to which this agreement applies who are not now members of the Transport Workers Union of America shall become members within thirty (30) days of the date of this agreement and remain members in good standing."

It is conceded by the defendants that they do not desire in any way to interfere with the employment of the plaintiffs or those who are not members of the union, except in so far as to ask and require them to join in compliance with this contract. Section 704 of the Labor Law, entitled " Unfair labor practices," states:

" It shall be an unfair labor practice for an employer * * *

" 5. To encourage membership in any company union or discourage membership in any labor organization, by discrimination in regard to hire or tenure or in any term or condition of employment: Provided that nothing in this article shall preclude an employer from making an agreement with a labor organization requiring as a condition of employment membership therein, if such labor organization is the representative of employees as provided in section seven hundred five."

The Transport Workers Union of America is the representative of the defendants' employees, selected and elected pursuant to said section and said Labor Law. The contract referred to was made pursuant to the terms and conditions of this law, so the only question presented is whether or not the contract is legal. Section 704 is new, added by chapter 443 of the Laws of 1937, taking effect July first of that year. Before the passage of this act this State at least recognized the rights of labor to combine and to strike for the purpose of procuring employment for its own workmen and to advance their interests; also the right to invite or solicit other workmen to join their union and to enforce by legal measures their demands.

6

(*National Protective Assn.* v. *Cummings*, 170 N. Y. 315.)
The case was decided in 1902, the court saying through
Chief Judge PARKER: " Workingmen have the right
to organize for the purpose of securing higher wages,
shorter hours of labor or improving their relations with
their employers.  They have the right to strike; that is,
to cease working in a body by pre-arrangement until a
grievance is redressed, provided the object is not to
gratify malice or inflict injury upon others, but to secure
better terms of employment for themselves.  A peaceable
and orderly strike, not to harm others, but to improve
their own condition, is not in violation of law " (p. 321).

As before stated, there is nothing in the present case
before us to indicate that any injury was sought or
intended to the plaintiffs or non-union members, but that
the object of the contract and of the action of the defend-
ant labor union is to advance its own interests and ability
of its members through the closed shop, to meet on even
terms their employers in present or future negotiations.

In 1927 this court, in *Exchange Bakery & Restaurant
Inc.*, v. *Rifkin* (245 N. Y. 260), stated in the prevailing
opinion: " The purpose of a labor union to improve the
conditions under which its members do their work; to
increase their wages; to assist them in other ways may
justify what would otherwise be a wrong.  So would an
effort to increase its numbers and to unionize an entire
trade or business. ⟨It may be as interested in the wages
of those not members, or in the conditions under which
they work as in its own members because of the influence
of one upon the other.⟩ All engaged in a trade are
affected by the prevailing rate of wages.  All, by the
principle of collective bargaining.  Economic organization
today is not based on the single shop.  Unions believe
that wages may be increased, collective bargaining
maintained only if union conditions prevail, not in some
single factory but generally.  That they may prevail it
may call a strike and picket the premises of an employer

with the intent of inducing him to employ only union labor. And it may adopt either method separately. Picketing without a strike is no more unlawful than a strike without picketing. Both are based upon a lawful purpose. Resulting injury is incidental and must be endured" (p. 263).

This case has become the law of this State and has been followed in other instances. Therefore, we approach this case in the light of the law as it was before section 704 of the Labor Law was adopted, and we find that a labor organization is permitted to combine and to strike in a particular industry for the purpose of obtaining employment for its own people, even to the extent of excluding others from the entire industry who are not union men. The one reservation in this law is that the attempt to accomplish the end shall be carried out in good faith and for the declared purposes, and not through malice or ill-will or a desire to injure non-union employees or simply and solely for the purpose of keeping them out of work.

If all this be lawful, what is there unlawful in negotiating with an employer to accomplish through peaceful negotiations that which the law permits to be done through strikes, which lead so frequently to disruption of business and violence? If the railroads in this instance, acting upon their own initiative, determined to dispense with the services of non-union men, I know of nothing in the law which would prevent them from doing so; or, to put it in a different way, if the defendant employers should come to their decision that, for the good of their enterprises, they would thereafter only employ union men, I do not see how the law could prevent them from doing so, or from discharging the plaintiffs and their non-union employees. It might be an unpleasant situation for all, but, nevertheless, one with which the law could not interfere. Recognizing this, I take it that it would not be unlawful because such a determination had been arrived at by the solicitation or request of the unions or

labor organizations. And then, to go one step further, why would it become illegal if the arrangements and determination were embodied in a contract or a written agreement with the labor organizations? Section 704 of the Labor Law above quoted evidently recognized the existing law and was passed in order to enable the employer to have some representative body with whom to negotiate, and labor, by its own selection, create a committee of representatives through whom contracts and negotiations could be made with authority, and which would hold like other contracts before the law.

In *Curren* v. *Galen* (152 N. Y. 33) this court considered a contract similar to the one we are here discussing to be void, but the reason for the decision was later explained in *Jacobs* v. *Cohen* (183 N. Y. 207) to be the malice, ill-will and injury intended the employee or plaintiff in the case; that the purpose was to prevent him from obtaining any employment. Such, of course, is not the purpose of this contract. Judge GRAY in this *Jacobs* case went further than merely to explain the ruling in the *Curran* case, and attempted to lay down for the court the law of this State relating to the relationship of employer and employee. He said: " * * * This contract was voluntarily entered into by the Cohens and, if it provided for the performance of the firm's work by those only who were accredited members, in good standing, of an organization of a class of workingmen whom they employed, were they not free to do so? If they regarded it as beneficial to them to do so (and such is a recital of the contract), does it lie in their mouths, now, to urge its illegality? That, incidentally, it might result in the discharge of some of those employed, for failure to come into affiliation with their fellow-workmen's organization, or that it might prevent others from being engaged upon the work, is neither something of which the employers may complain, nor something with which public policy is concerned " (p. 215).

A case directly in point is *Kissam* v. *United States Printing Co.* (199 N. Y. 76). Reference may also be made to *Interborough Rapid Transit Co.* v. *Lavin* (247 N. Y. 65).

In *American Steel Foundries* v. *Tri-City Central Trades Council* (257 U. S. 184, at p. 209), referring to the recognition which the Clayton Act had given labor unions, Chief Justice TAFT, in writing the opinion for the court, said: " * * * The strike became a lawful instrument in a lawful economic struggle or competition between employer and employees as to the share or division between them of the joint product of labor and capital. To render this combination at all effective, employees must make their combination extend beyond one shop. It is helpful to have as many as may be in the same trade in the same community united, because in the competition between employers they are bound to be affected by the standard of wages of their trade in- the neighborhood."

*Duplex Printing Press Co.* v. *Deering* (254 U. S. 443) was a pure case of secondary boycotting, and has no relation to the point here under discussion.

As I have stated at the beginning, the attorney for the plaintiffs has conceded that this contract is valid and that the law is constitutional except in the one particular stated, which is that, as the defendant employers constitute the main transit and railroad lines in the locality stated, there is by this contract a monopoly created; that is, if only union men are to be employed, the plaintiffs, if they refuse to join the union, will be without employment. Upon the argument counsel was led to state that carrying out this doctrine to its logical conclusion all such contracts would be illegal where the employer in a village or town or small community was the only one in that particular line of business. We think that this distinction is not justified, and that if there be an evil in the monopoly of the labor market in a particular

industry by labor organizations it is a matter to be considered by legislatures and not by the courts, for the reason that there are two sides to the question — the other side being that the labor organizations, through this means of contracting and negotiating, are enabled to strengthen their representative bodies and to effectuate collective bargaining. Of course, demands on either side may be carried too far. These, however, are not matters for the courts to consider. Public opinion is soon reflected in legislation. We can simply approach the question and decide it according to principles of law. The wisdom of legislation or the reasonableness of action under legislation are matters which must be put aside by us in considering these questions.

Besides, we find recognition of this rule in paragraph 2 of section 340 of the General Business Law (Cons. Laws, ch. 20), relating to monopolies. Agreements are declared to be void and against public policy which create or maintain a monoply in the manufacture, transportation or the free pursuit of any lawful business, trade or occupation. Paragraph 2, however, says that these provisions shall not apply to co-operative associations, corporate or otherwise, of farmers, gardeners or dairymen, nor to contracts, agreements or arrangements made by such associations, nor to *bona fide* labor unions.

Upon this appeal a question under the Federal Constitution was presented and necessarily passed upon by this court. The plaintiffs contend that section 340, subdivision 2, of the General Business Law of the State of New York is in violation of, and repugnant to, the Fourteenth Amendment to the Constitution of the United States. This court holds that the law aforesaid does not violate, nor is it repugnant to, the Fourteenth Amendment of the Constitution of the United States.

The order appealed from should be affirmed, without costs, and the question certified answered in the negative.

LEHMAN, O'BRIEN, LOUGHRAN, FINCH and RIPPEY, JJ., concur; HUBBS, J., taking no part.

Order affirmed, etc.