JOSEPH M. BUCKO, on His Own Behalf and on Behalf of All Others Similarly Situated, etc., Plaintiff, *v.* THOMAS E. MURRAY, JR., as Receiver of the Interborough Rapid Transit Company, AUSTIN HOGAN, as President of the Transport Workers Union of America, an Unincorporated Association, EDWARD P. LAVIN and Others, on Their Own Behalf and on the Behalf of All Others Similarly Situated, Defendants.

Supreme Court, Special Term, New York County, April 10, 1939.

*John Spinelli* [*Frank J. Verdirame* of counsel], for the plaintiff.

*Miller, Owen, Otis & Bailly*, for the receiver of the Interborough Rapid Transit Company.

*Harry Sacher*, for the remaining defendants.

CotilLo, J. The plaintiff, a motorman employed by the defendant Interborough Rapid Transit Company and a member of the defendant Transport Workers Union of America, suing in a representative capacity, is seeking an injunction restraining defendants from enforcing a portion of an alleged contract entered into between the defendants on November 28, 1939. The portion of the alleged contract under attack is a provision by which the seniority rights of certain employees were attempted to be determined by a referendum.

The plaintiff and his associates, as well as the defendants Lavin, Ward, Gallagher, Sharp, Durkin, Spagna and the class which these defendants represent, are employed as motormen by the Interborough Rapid Transit Company. Some of the plaintiffs have been in such employ since 1926 and all of the plaintiffs for at least twelve years. On July 14, 1926, the defendants Lavin, Gallagher, Sharp, Durkin and Spagna and the class they represent declared a strike and quit their employment. The plaintiffs then employed by the Interborough refused to go out on strike and remained on their jobs. The strike resulting in a victory for the company, the strikers returned to work but lost certain seniority rights, and only received the seniority rights beginning with their return to work. This status continued for more than twelve years.

On July 29, 1937, the defendant Transport Workers Union of America became the bargaining agent for the employees, and on that date entered into a contract with the Interborough which specifically provided that all motormen then in the employ of the company would be entitled to all the existing rights and privileges then held by them. From the date of the strike in 1926 and under the contract of July 29, 1937, the plaintiffs had seniority rights superior to more than two hundred other employees. On November 28, 1938, a new contract was attempted to be entered into between the union and the company, in which it was provided that a referendum would be held to determine whether or not a change should be made in the right of seniority.

The memorandum purporting to set forth an agreement between the union and the defendant receiver of the Interborough Rapid Transit Company stated that a secret referendum of all the motormen and yard motormen (switchmen) who were in the company's employ on July 1, 1926, on the subway division of the Interborough Rapid Transit Company shall be held on the 11th day of January, 1939, on the following question: Shall the order of seniority among motormen and switchmen who were in the employ of the Interborough Rapid Transit Company on July 1, 1926, and who are in

the employ of the receiver on the 11th day of January, 1939, be deemed to be that which it was on July 1, 1926?

Prior to this referendum it was the custom of the Interborough Rapid Transit Company to maintain a seniority list consisting of motormen. From this list, according to their seniority, the motormen were entitled to choice of schedule runs, days off from work, vacations and other rights or privileges arising out of this employment. In addition to this list of motormen a separate list was maintained affecting switchmen, sometimes called yard motormen, whose privileges were different than those to which the motormen were entitled. It is undisputed that some of the individual defendants on July 1, 1926, were switchmen. Some of them apparently are still within that classification. After the strike some of them returned to work as switchmen but have since been promoted to motormen with seniority dating from the promotion. The unfairness of the referendum is apparent when its effect is considered. As a result of the vote taken switchmen employed as such on July 1, 1926, have now been granted seniority rights as motormen superior to the rights of motormen employed as such on July 1, 1926. The terms of the referendum are also obviously unfair. Men who left the employ of the railroad on any date after July 1, 1926, and who returned on any date prior to January 11, 1939, were permitted to vote, while men continuously employed during the almost twelve and a half years between those dates were denied this opportunity. The so-called referendum was anything but what the word customarily implies. Here those who would be benefited by voting for the proposition were the only ones permitted to vote. All those who would be injured by such affirmative vote were excluded. This is not a fair vote according to standards heretofore prevailing in these United States. Packed ballot boxes have no valid standing in an American election.

The " closed shop " agreement entered into between the receiver and the union on May 27, 1937, is a valid and binding contract for the purposes for which it was intended. The plaintiff here has no quarrel with that contract or with its aims. Labor organizations are permitted to contract with the employer, even to the extent of excluding others from the entire industry who are not union men. (*Williams* v. *Quill*, 277 N. Y. 1.) But labor organizations are not permitted to act in bad faith or through malice or ill-will nor may they be actuated by malice or a desire to injure employees, whether the latter be members of the union or not. As was said in the case of *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin* (245 N. Y. 260), which has become the law in this State and has been followed in other instances: " The purpose of a labor union to

improve the conditions under which its members work; to increase their wages; to assist them in other ways may justify what would otherwise be a wrong." In the case of *Interborough Rapid Transit Co. v. Lavin* (247 N. Y. 65) it is pointed out that a combination of employees in a concerted demand for a change of conditions of employment for the better is not unlawful and the interest of a union in bettering wages and working conditions is commended. In the present case the plaintiff complains because what the union has done has been obviously not for his benefit. Moreover, the method employed may not be countenanced, even though it was used to effectuate an erasure of the situation which prevailed when the individual defendants re-entered the employ of the railroad. The individual defendants may be able to find justification for the purpose behind the new agreement with reference to seniority rights. The method employed to accomplish the purpose cannot be upheld. The plaintiff had a contract with the railroad and that contract was recognized and affirmed by the union's contract with the railroad company. The attempted referendum from which the plaintiff and those he represents were excluded is not a lawful means whereby the rights guaranteed to the plaintiff by his contract could be taken away, in the absence of any corresponding benefit to him or his coworkers.

Settle order restraining the enforcement of the results of the referendum, and also setting the case for trial on April 10, 1939. The order is to provide for the posting of a bond of $250 to cover all the defendants.