## OTTEN v. BALTIMORE & O. R. CO. et al.
### No. 255, Docket 22672.

United States Court of Appeals
Second Circuit.

Argued May 5, 1953.

Decided June 8, 1953.

Leone Pecoraro, New York City, for appellant.

Sydney Prince, Jr., Baltimore, Md., Robert Schwebel and John C. Avery, New York City, for defendant-appellee Staten Island Rapid Transit, etc.

Lester P. Schoene, Washington, D. C., Louis Sherman, Washington, D. C., Harold W. Harrison, New York City, for intervenor-defendant-appellee.

Before SWAN, Chief Judge, and L. HAND and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

■ The plaintiff appeals from an order of the District Court, denying his motion for a temporary injunction restraining the defendant railroads from discharging him from their employ; and also from an order allowing the International Brotherhood of Electrical Workers to intervene. (Since the second order is clearly unappealable, we shall disregard it.) Two points arise: (1) whether the action should be tried to a court of three judges under the Judiciary Act;[1] and (2) whether, if not, it was right to deny the injunction. The facts, which were undisputed, were as follows. Otten, the plaintiff, is a "third-rail maintainer" employed by the defendant railways. He was in their employ in September 1951, when they entered into a contract with the intervening union providing for a "union shop": that is, that all employees should

1. § 2282, Title 28 U.S.C.

become members of the union within 60 days after they were engaged by the railways, and that they should thereafter "maintain membership in good standing" in the union. Otten refused to join the union because his religious scruples forbad his becoming a member of any organization, composed in any part of "unbelievers": he is a member of the "Plymouth Brethren IV," who deduce this duty from Chapter 6, verse 14, of the Second Epistle to the Corinthians. The union offered to dispense with Otten's becoming a member formally, if he would pay the same dues, fees and assessments that were required of members; and it offered to deposit his payments in its funds for the support of its retired members. Since, however; this did not obviate the objection of an association with unbelievers, Otten's religion still forbad his acceptance. After protracted negotiations seeking an accommodation the defendants discharged him, and he thereupon sued for reinstatement on the ground that the Railway Labor Act[2] is unconstitutional, in authorizing a "union shop" agreement between the roads and the union. Judge Abruzzo decided that the case did not require a "three judge" court, and that the plaintiff was not entitled to a preliminary injunction on the merits.

The Eleventh subsection of § 152 of Title 45 U.S.C. permits a railway and a union to agree to a "union shop" notwithstanding any "statute or law", state or federal, that forbids such agreements. The action being to enjoin the performance of such an agreement because it compels the railroads to discharge the plaintiff, can fall within § 2282 of the Judiciary Act[3] only if such an injunction would restrain the "enforcement, operation or execution" of the subsection. We cannot understand how the subsection can be regarded as conferring validity on the agreement, since all it

does is to exempt it from nullification by other statutes or laws. It is true that at the time of its passage in 1951 Subsection Fifth of § 152 made it unlawful for a railway to require an employee to join any union as a condition of employment, and we may assume, arguendo, that that subsection still forbids a "closed shop." Be that as it may, to succeed, the plaintiff must insist that Subsection Eleventh is unconstitutional because it repealed Subsection Fifth so far as it had affected "union shop" agreements; and that it affirmatively legalized them. That, however, is plainly a misconception of its effect, which was equivalent only to a repeal, pro tanto, of Subsection Fifth. Although that subsection had made such agreements illegal, its repeal left them as they were before it was passed; and there can be no plausible argument that to repeal such a statute was unconstitutional—certainly, if no vested rights had accrued upon the faith of the repealed statute. In this aspect the plaintiff's claim of unconstitutionality is too "unsubstantial" to require a "three-judge" court.[4] That, however, is not necessarily a final answer, for it might be that a "union shop" agreement was invalid at common law; and, if so, there is at least a plausible argument that Subsection Eleventh did indeed positively and affirmatively establish its validity, and a challenge to its constitutionality, so considered, might not be "unsubstantial." This would, it is true, involve reading the word, "law," in Subsection Eleventh to include common law; but we shall assume that that is permissible. The answer is, however, that in New York, where the plaintiff was employed and where the agreement impinged upon him, a "union shop," and perhaps even a "closed shop," agreement was valid at the common law.[5] Therefore, from no view can the constitutionality of Subsection Eleventh be considered to be involved and it was right not

2. § 152 Eleventh, Title 45 U.S.C.A.

3. § 2282, Title 28 U.S.C.

4. Ex parte Buder, 271 U.S. 461, 467, 46 S.Ct. 557, 70 L.Ed. 1036; Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152; California Water Service Co. v. Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323; William Jameson & Co. v. Morgenthau, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189.

5. National Protective Association v. Cumming, 170 N.Y. 315, 63 N.E. 369, 58 L. R.A. 135; Jacobs v. Cohen, 183 N.Y. 207, 76 N.E. 5, 2 L.R.A.,N.S., 292; Williams v. Quill, 277 N.Y. 1, 12 N.E.2d 547.

to assemble a "three-judge" court. There remains the question whether the denial of an injunction was proper.

On the merits there can be no doubt. The union has not excluded the plaintiff; on the contrary it has made substantial concessions to induce him to join. The situation is *toto coelo* different from Steele v. Louisville & Nashville Railway Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, where it did exclude Steele. Otten complains that the other employees deem it in their interest to combine and are not willing to work with anyone who will not combine with them. It is true that in so doing they exercise the strongest kind of economic sanction upon the railways not to employ him unless he will join, but both their combination and the railways' refusal are lawful, unless it be because they conflict with his scruple. This conflict results in making it necessary either for the union to yield what it deems to be one of its important interests—a "union shop" with the control that that gives them in dealing with the railways—or for the plaintiff to yield on a point of conscience. Such conflicts are inevitable; and, when to economic sanctions no political sanction is added, they do not ordinarily raise any constitutional question. The First Amendment protects one against action by the government, though even then, not in all circumstances;[6] but it gives no one the right to insist that in the pursuit of their own interests others must conform their conduct to his own religious necessities. A man might find it incompatible with his conscience to live in a city in which open saloons were licensed; yet he would have no constitutional right to insist that the saloons must be closed. He would have to leave the city or put up with the *iniquitous dens,* no matter what economic loss his change of domicil entailed. We must accommodate our idiosyncrasies, religious as well as secular, to the compromises necessary in communal life; and we can hope for no reward for the sacrifices this may require beyond our satisfaction from within, or our expectations of a better world.

Order affirmed.

6. Reynolds v. United States, 98 U.S. 145. 25 L.Ed. 244.