231 F.2d 130
 9 Fair Empl.Prac.Cas. (BNA) 247, 1 Empl. Prac.
Dec. P 9647
George C. WICKS, Plaintiff and Appellant,
v.
SOUTHERN PACIFIC CO. (Pacific Lines), Defendant and
Appellee; Brotherhood of Maintenance of Way
Employees, Intervenor and Appellee.
Philip F. JENSEN, Plaintiff and Appellant,
v.
UNION PACIFIC RAILROAD CO., a Corporation, Defendant and
Appellee; Brotherhood of Railway and Steamship
Clerks, Freight Handlers, Express and
Station Employees, Intervenor
and Appellee.
 Nos. 14483, 14484.
 United States Court of Appeals Ninth Circuit.
 March 6, 1956.
Writ of Certiorari Denied May 28, 1956.
See 76 S.Ct. 845.
 
 Hill, Farrer & Burrill, Ray L. Johnson, Jr., Carl M. Gould, Mark E. True, Los Angeles, Cal., for appellants.
 Burton Mason, W. A. Gregory, Jr., San Francisco, Cal., for appellee Southern Pacific Co.
 Edward C. Renwick, Los Angeles, Cal., for appellee Union Pacific R. Co.
 P. H. McCarthy, Jr., San Francisco, Cal., Lester P. Schoene, Milton Kramer, Washington, D.C., for intervenor and appellee Brotherhood of Maintenance of Way Employees.
 Irl D. Brett, Los Angeles, Cal., Mulholland, Robie & Hickey, Washington, D.C., for appellee Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees.
 Clarence M. Mulholland, Toledo, Ohio, Edward J. Hickey, Jr., Washington, D. C., James L. Crawford, Cincinnati, Ohio, for intervenors-appellees.
 Before BONE, LEMMON and CHAMBERS, Circuit Judges.
 BONE, Circuit Judge.
 
 
 1
 By stipulation of the parties these two cases arising in California where appellants reside[1] were consolidated on this appeal since they involve the same issues arising out of ultimate facts similar in nature. The facts are not in dispute.
 
 
 2
 Each appellant has long been an employee of one of the appellee railroads here involved, Wicks since 1914, Jensen since 1917; each has been continuously so employed except for a short time during the First World War; each is presently able, ready and willing to continue his service; the railroads are willing to continue that employment; each appellant has 'built up' through his period of employment certain valuable benefits in terms of seniority, retirement rights (including a pension for the remainder of their natural lives after attaining the age of 65), hospital and medical care for the rest of their lives upon retirement at 65, and free railroad transportation in the United States, Canada and Mexico upon retirement. (The last named transportation privilege is granted by grace of company policy and not by right of any employment contract.) By reason of each appellant's refusal to join the union representing the appropriate bargaining unit in which his work places him, the intervening unions have ordered the employing railroads to dismiss both appellants. This procedure is in accordance with the terms of union shop clauses in the collective bargaining agreements which each union has with the railroads.
 
 
 3
 Appellants' refusal to join the union is apparently motivated solely by religious principles. However, they have offered to pay the required amount of the union fees, dues and assessments to some recognized charity, such as the Cancer Fund, or American Red Cross, but the unions found this offer unacceptable. To meet such a situation both unions entered into a supplemental agreement with the railroads under which any employee in their respective union bargaining units having genuine religious beliefs against joining a union, might avoid dismissal from railroad employment pursuant to the union shop clause by simply paying the normal and regular union fees, dues and assessments into the union treasury. Under this arrangement appellants would avoid the necessity of becoming members of the unions, thereby escaping (what to them) would be the stigma of being identified as an 'active member' of a union.
 
 
 4
 This proposed solution was rejected by appellants as also being in violation of their religious beliefs.[2]
 
 
 5
 Appellants exhausted available remedies under the grievance machinery established by the collective bargaining agreements between the unions and the railroads, and thereafter commenced this action against appellee railroads seeking to have Subsection Eleventh of section 2 of the Railway Labor Act, infra, permitting a union shop, declared to be unconstitutional, and to permanently restrain defendant railroads, their officers, agents, representatives and employees, from terminating the employment and seniority rights of appellants. They also sought a preliminary injunction to restrain the discharge of appellants until a final determination of the action, a temporary restraining order pending hearing for a preliminary injunction, and for an order to show cause why such a preliminary injunction should not issue, and if for any reason it became impossible or impractical for the court to so restrain defendants, then the court to grant a judgment restoring appellants to their employment without loss of seniority or other rights, together with damages.
 
 
 6
 Appellants made an application for a three-judge court to hear the claimed constitutional issues as provided in 28 U.S.C.A. § 2282. The railroad unions sought and were permitted to intervene in each case. Temporary restraining orders against dismissal were issued, but upon further proceedings in the cases these orders were dissolved and the applications for permanent injunctions were denied. Motions for summary judgments and dismissals of appellants' actions were granted. From this final action appellants prosecuted this appeal.
 
 
 7
 The dispute in these cases stems from the fact that by an amendment of January 10, 1951 to the Railway Labor Act, 45 U.S.C.A. § 152, Eleventh, a so-called 60 day 'union shop' agreement provision is permissible. Prior to this amendment union security agreements were invalid under 45 U.S.C.A. § 152, Fourth and Fifth, of this Act.[3]
 
 
 8
 At oral argument here appellants for the first time raised the question of the jurisdiction of this Court to hear and decide an appeal from the action of the lower court in these cases. As to this phase of the cases they assert that since the constitutionality of an Act of Congress was in issue the lower court was required to convene a three-judge court to hear their demands for a permanent decree restraining operation of an allegedly unconstitutional Act of Congress (i.e., Subsection Eleventh), as apparently required by 28 U.S.C.A. § 2282.[4] The gist of their argument is that a single district court judge lacks jurisdiction to grant the motions for summary judgments and dismissals, with the result that this Court also has no jurisdiction to hear an appeal from such an action by the lower court.
 
 
 9
 Appellants buttress their argument on the issue of lack of our jurisdiction on this appeal by reliance on four cases, Stratton v. St. Louis S.W. Ry. Co., 1930, 282 U.S. 10, 51 S.Ct. 8, 75 L.Ed. 135; Ex parte Poresky, 1933, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152; Grigsby v. Harris, D.C.S.D.Tex.1928, 27 F.2d 945; and Waddell v. Chicago Land Clearance Commission, 7 Cir., 1953, 206 F.2d 748. All of these cases arose under 28 U.S.C.A. § 2281, a statute providing for a three-judge court when the validity of a state statute is at issue on federal constitutional grounds.[5]
 
 
 10
 On authority of Stratton v. St. Louis S.W. Ry. Co., supra, it is urged to us that a single district judge acts without jurisdiction when he grants summary judgment and dismissal of an action where the complaint raises the question of constitutionality of an Act of Congress by seeking relief in the form of 'an interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States * * *.' 28 U.S.C.A. § 2282. In reliance upon the Stratton case, supra, appellants now urge that the appropriate procedure following such action by the lower court was for them not to appeal to this Court (since it would lack jurisdiction in such an appeal) but rather to directly petition the Supreme Court for mandamus directing the district court judge to convene a three-judge court.
 
 
 11
 We have found no case which adequately discusses and disposes of the precise issue thus tendered here, that is to say, the power of this Court to entertain an appeal from the refusal by the lower court to convene a three-judge court, and the granting of summary judgments and dismissals by the district judge. But we conclude that the cases called to our attention fail to sustain the jurisdictional contentions of appellants.
 
 
 12
 From a reading of the Stratton and Poresky cases, supra, we are of the opinion that the trial judge sitting alone may initially determine if there is a 'substantial' federal constitutional issue presented by a complaint which seeks an interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress as being repugnant to the United States Constitution. We believe that a single district judge may dismiss a complaint if he decides that a substantial constitutional issue is not raised therein. It is only where a single district judge decides that a complaint raises a substantial constitutional issue and proceeds to decide that issue on its merits, that he acts without jurisdiction. The remedy for such action is to seek mandamus from the Supreme Court to compel the convening of a three-judge court to hear and decide the substantial constitutional issue in the case on its merits.
 
 
 13
 Our view of the four cases cited above by appellants is supported by California Water Service Co. v. City of Redding, 1938, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323, a case involving 28 U.S.C.A. § 2282, in which the Supreme Court said: 'We have held that section 266 of the Judicial Code (now 28 U.S.C.A. § 2281), does not apply unless there is a substantial claim of the unconstitutionality of a state statute or administrative order as there described. It is therefore the duty of a district judge, to whom an application for an injunction restraining the enforcement of a state statute or order is made, to scrutinize the bill of complaint to ascertain whether a substantial federal question is presented, as otherwise the provision for the convening of a court of three judges is not applicable. Ex parte Buder, 271 U.S. 461, 467, 46 S.Ct. 557, 559, 70 L.Ed. 1036; Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152. We think that a similar rule governs proceedings under Section 3 of the Act of August 24, 1937, as to the participation of three judges in passing upon applications for injunctions restraining the enforcement of federal statutes upon the ground of constitutional invalidity.' At pages 254-255 of 304 U.S., at page 866 of 58 S.Ct. (Emphasis supplied.)
 
 
 14
 In the cases at bar the district judge issued temporary restraining orders pending hearing on the applications for preliminary injunctions restraining discharge of appellants until final determination of their requests for a permanent restraining order and pending a hearing on the application to convene a three-judge court. After such a hearing the lower court found and determined that no substantial constitutional issue was presented in the complaints of appellants,[6] dissolved the temporary restraining orders and granted summary judgments, dismissing both actions. We regard this action as proper under the circumstances of these cases particularly in view of the holdings in the cases cited above.
 
 
 15
 In Schermerhorn, Inc., v. Holloman, 10 Cir., 1934, 74 F.2d 265 the plaintiff demanded the convening of a three-judge court. This demand was denied by the trial judge who dismissed the action. The Tenth Circuit Court said, 'A trial judge is authorized to determine in the first instance whether a case is one requiring disposition by a special court convened in accordance with the statute, and he is not required to call two additional judges to his assistance unless the case is of that nature. (Cases cited.) His decision upon the question is subject to review.' At page 266 of 74 F.2d. (Emphasis supplied.) We hold that this Court does have jurisdiction to entertain and dispose of this appeal.
 
 
 16
 On the merits, appellants assert that the 'ultimate issue' before us is whether the district court correctly decided that there was no substantial constitutional issue raised in these cases. We think that its conclusion on this issue was correct.[7] We further conclude that the summary judgments of dismissal were proper and that the district court did not err in refusing to convene a three-judge court.
 
 
 17
 Appellants claim that there are substantial constitutional issues in these cases because the union shop amendment of 1951 deprives them of their right to work and of freedom of association contrary to the Fifth Amendment guarantee that no person shall be deprived of liberty or property without due process of law. Appellants assert that Subsection Eleventh requires involuntary money payments which is a deprivation of appellants' property without due process of law in that it is an exercise of the taxing power in favor of private organizations. They further contend that they are denied freedom of assembly, petition, speech and religion as secured by the First Amendment. All the foregoing contentions are based upon the First and Fifth Amendments to the Constitution which prohibit Congressional action within certain enumerated areas.[8]
 
 
 18
 We are persuaded that the case of Otten v. Baltimore & O.R. Co., 2 Cir., 1953, 205 F.2d 58, was correctly decided and is dispositive of appellants' contentions. The facts and legal issues in Otten practically duplicate those in the cases at bar. The court there said: '* * * to succeed, the plaintiff must insist that Subsection Eleventh is unconstitutional because it repealed Subsection Fifth so far as it had affected 'union shop' agreements; and that it affirmatively legalized them. That, however, is plainly a misconception of its effect, which was equivalent only to a repeal, pro tanto, of Subsection Fifth. Although that subsection had made such agreements illegal, its repeal left them as they were before it was passed; and there can be no plausible argument that to repeal such a statute was unconstitutional * * *. In this aspect the plaintiff's claim of unconstitutionality is too 'unsubstantial' to require a 'three-judge' court.' 205 F.2d at page 60.
 
 
 19
 Assuming, arguendo, that an Act of Congress which 'affirmatively legalized' the so-called union shop would be invalid within the purview of the First and Fifth Amendments, we believe that an amendment 'which was equivalent only to a repeal, pro tanto,' of the prior Subsection Fifth (along with Subsection Fourth) would not raise a constitutional issue since it would in no way have 'affirmatively legalized' a so-called union shop. Since we view Subsection Eleventh to be equivalent to a repeal, pro tanto, of the prior subsections above noted, we think it unnecessary to discuss arguments of appellants that Subsection Eleventh is 'affirmative legalization' of the 'union shop,' or 'affirmative regulation' of the contents of union security provisions in collective bargaining agreements. As was further said in Otten, supra, 'The Eleventh subsection of § 152 of Title 45 U.S.C.A. permits a railway and a union to agree to a 'union shop' notwithstanding any 'statute or law', state or federal, that forbids such agreements. * * * We cannot understand how the subsection can be regarded as conferring validity on the agreement, since all it does is to exempt it from nullification by other statutes or laws.'[9] At page 60 of 205 F.2d.
 
 
 20
 It was pointed out in Otten, supra, that there 'might' be a substantial constitutional issue if state law prohibited the union shop while the amendment of Congress permitted the union shop. But the Second Circuit found no substantial constitutional issue on this ground as New York law did not prohibit the union shop.[10] Here again, these cases before us fall within the facts of the Otten case. California, like New York, permits union security agreements, including a form even more liberal than the so-called union shop, namely the 'closed shop.' Consult Colgate-Palmolive-Peet Co. v. N.L.R.B., 1949, 338 U.S. 355, 361, 70 S.Ct. 166, 94 L.Ed. 161, and cases there cited.
 
 
 21
 Appellants also contend that there is a substantial constitutional issue in these cases because Subsection Eleventh was not passed pursuant to the power of Congress to regulate interstate commerce.[11] We disagree. While this issue apparently was not argued in the Otten case, supra, the trial court in the two cases before us did consider the argument and reached the conclusion that 'notwithstanding this contention * * * this court is of the opinion that the reasoning of the court in that case (Otten, supra) is very persuasive here.'[12]
 
 
 22
 Our ultimate conclusion is that the Subsection Eleventh is to be regarded as a pro tanto repeal by Congress of the sections which proscribed the so-called union shop and that in this posture the legislation does not pose a substantial constitutional issue over Congressional regulation of interstate commerce.
 
 
 23
 It is contended by appellants that the union security agreement before us violates the Thirteenth Amendment since it requires appellants to involuntarily pay over a part of their earnings to the union. The Thirteenth Amendment prohibits for all time slavery or involuntary servitude in the United States, with the exception of punishment for a crime of which the prisoner has been duly convicted, Bailey v. State of Alabama, 1911, 219 U.S. 219, 31 S.Ct. 145, 55 L.Ed. 191. We think that appellants' argument on this point is without substance or merit. The cases cited by appellants are not controlling in the fact situations before us.[13]
 
 
 24
 The essence of slavery or involuntary servitude is that the worker must labor against his will for the benefit of another, Crews v. Lundquist, 1935, 361 Ill. 193, 197 N.E. 768; Hodges v. United States, 1905, 203 U.S. 1, 27 S.Ct. 6, 51 L.Ed. 65; Ex parte Drayton, D.C.S.C.1907, 153 F. 986. There is no contention that appellants cannot freely leave their employment with the railroads (and/or withdraw from the unions if they should join them) and thus escape payment of dues, fees and assessments to these railroad unions. While leaving their present employment would entail serious losses in terms of seniority rights, medical benefits and retirement benefits, the fact remains that appellants are not being compelled or coerced to work against their will for the benefit of another.
 
 
 25
 A substantial constitutional issue was not raised in the complaints of appellants. The lower court correctly disposed of these cases and its summary judgments and dismissals are hereby affirmed.
 
 
 
 [1]
 The complaints allege that Union Pacific Railroad Co. is a Utah corporation doing business in the Southern District of California, Central Division, and that the Southern Pacific Co. is a Delaware corporation doing business in the same geographical area. The jurisdiction of the lower court was based upon (a) diversity of citizenship; (b) a federal question presented, namely, the constitutionality of the provisions of the Railway Labor Act, 45 U.S.C.A. § 151 et seq.; (c) the matter in controversy exceeded the value of $3,000.00, exclusive of interests and costs
 
 
 [2]
 Appellants are members of a religious sect known as Plymouth Brethren and are unwilling to accept this sort of solution. The ground of their refusal is that any money they pay into the coffers of the unions will be aiding and abetting 'unbelievers.' This attitude of hostility to the idea of 'joining' a union is based on scriptural grounds. As justification for their stand they rely on language found in Second Corinthians, Chapter VI, verse 14, which reads as follows: 'Be ye not unequally yoked together with unbelievers: for what fellowship hath righteousness with unrighteousness? and what communion hath Light with darkness?' The record is void of any suggestion that union affiliation requires adherence of union members to any church, religious sect, or brand of theology
 
 
 [3]
 45 U.S.C.A. § 152, Fourth, reads, in part, 'Employees shall have the right to organize and bargain collectively through representatives of their own choosing * * * and it shall be unlawful for any carrier to interfere in any way with the organization of its employees * * * or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization * * *.'
 Subsection Fifth reads, in part, 'No carrier, its officers, or agents shall require any person seeking employment to sign any contract or agreement promising to join or not to join a labor organization * * *.'
 Subsection Eleventh reads, in part, 'Notwithstanding any other provisions of this chapter, or of any other statute or law of the United States, or Territory thereof, or of any State, any carrier or carriers as defined in this chapter and a labor organization or labor organizations duly designated and authorized to represent employees in accordance with the requirements of this chapter shall be permitted--
 '(a) to make agreements, requiring, as a condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class * * *.'
 '(d) Any provisions in paragraphs Fourth and Fifth of this section in conflict herewith are to the extent of such conflict amended.'
 
 
 [4]
 28 U.S.C.A. § 2282 reads, 'An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.'
 
 
 [5]
 28 U.S.C.A. § 2281 reads, 'An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.'
 
 
 [6]
 That the lower court based its determination of the cases on the question of substantiality of the constitutional issues involved may be seen by quoting parts of its decision. 'Identical legal issues to the ones presented in this case have recently been before the Court of Appeals for the Second Circuit in a case involving a strikingly similar factual situation. Otten v. Baltimore & Ohio R. Co., 2 Cir., 1953, 205 F.2d 58. * * *
 'This court has considered the legal issues present in this case independently of the Otten case and in doing so has considered plaintiffs' contention that the Eleventh subsection of the Railway Labor Act, 45 U.S.C.A. § 152, was beyond the legislative power of Congress. * * * Notwithstanding this contention, which plaintiffs urge was not considered in the Otten case, this court is of the opinion that the reasoning of the court in that case is very persuasive here. I feel that Judge Hand's reasoning is unassailable notwithstanding slighting comments of counsel.
 'The court in the Otten case held that there was no substantial constitutional question presented calling for a three-judge court * * *. This court agrees with and adopts that holding.' D.C.S.D.Cal.1954, 121 F.Supp. 454, 456-457.
 
 
 [7]
 The decision of Judge Harrison from which the instant appeals were taken is Wicks v. Southern Pacific Co., Jensen v. Union Pacific R. Co., D.C.S.D.Cal.1954, 121 F.Supp. 454. Cf. Allen v. Southern Ry. Co., D.C.W.D.N.C.1953, 114 F.Supp. 72
 
 
 [8]
 The First Amendment, apparently, does not preclude Congressional action in all circumstances, Reynolds v. United States, 1878, 98 U.S. 145, 25 L.Ed. 244
 
 
 [9]
 Cf. Allen v. Southern Ry. Co., D.C.W.D.N.C.1953, 114 F.Supp. 72, where, following the convening of a three-judge court to hear the constitutional issues raised by Subsection Eleventh in juxtaposition to the state's so-called 'right to work' statute, the court remanded the case to the state court as it viewed the case not to arise under the Constitution and laws of the United States. The court said, in part, 'The amendment to the Railway Labor Act of which we take judicial notice must unquestionably be considered in passing upon the case; but the complaint states no cause of action arising under that statute, the effect of which is to destroy any cause of action which plaintiff might otherwise have had under state law.' At page 73 of 114 F.Supp
 
 
 [10]
 In reference to this aspect of the Otten case, supra, appellants argue that an Act of Congress could not be constitutional in those states which permit union shops and be unconstitutional in those states which prohibit union shops by means of their 'right to work' statutes. The gist of this argument is that an Act of Congress must be constitutional in all states or be unconstitutional in all states. Appellants rely on Hanson v. Union Pacific Railroad Co., 1955, 160 Neb. 669, 71 N.W.2d 526, where the court apparently held the amendment, Subsection Eleventh, to be an unconstitutional exercise of the power of Congress since it violated the 'due process' rights of the individual employee to freedom of association, his right to work, and his right to keep proceeds of his work without making involuntary contributions to labor unions the expenditure of which the individual worker might disapprove. The Hanson case is not persuasive because we are not here confronted with a California statute which in any way questions the validity of contractual agreements of the exact character of those here involved, whereas Nebraska does have a 'right to work' statute
 Another state court has quite recently decided much the same issue that was before the court in the Hanson case, that is, the validity of a Congressional Act when applied in a state having on its statute books one of the so-called 'right to work' acts, Hudson v. Atlantic Coast Line R. Co., 1955, 242 N.C. 650, 89 S.E.2d 441, 443, 445. The North Carolina Court phrased the issue thusly, 'Is a union shop agreement, complying in all respects with the provisions of the Union Shop Amendment to the Railway Labor Act * * * void under the North Carolina statute, sometimes called the Right to Work Act * * *?' The court proceeds, 'This question, of primary importance to decision, must be answered, 'No." At pages 445-446 of 89 S.E.2d. The North Carolina Supreme Court held the Act of Congress here involved superseded the state law where they were in conflict, as the Act of Congress was passed pursuant to the powers of Congress to regulate interstate commerce, Constitution of the United States, Article I, § 8, Clause 3. In discussing these two cases we are not unmindful of the fact that the issues presented to the North Carolina Supreme Court were somewhat narrower than the issues presented to the Nebraska Supreme Court.
 
 
 [11]
 The Railway Labor Act of 1926 (and the 1934 amendments) with provisions for collective bargaining between a railroad company and its employees, and prohibiting either company or employees to exert influence on the choice of bargaining representatives by the other has been found constitutional. Texas & N.O.R. Co. v. Brotherhood of Railway & S.S. Clerks, 1930, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034; Virginian R. Co. v. System Federation No. 40, 1937, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789. Appellants rely upon Adair v. United States, 1908, 208 U.S. 161, 28 S.Ct. 277, 52 L.Ed. 436, and Railroad Retirement Board v. Alton Railroad Co., 1935, 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468, which seem to say that union membership and retirement pensions have no legal or logical connection with interstate commerce. But in view of the Texas & N.O.R. Co. v. Brotherhood of Railway & S.S. Clerks, supra, and Virginian R. Co. v. System Federation No. 40, we believe the cases cited by appellants are not controlling on the facts before us. See Mandeville Island Farms v. American C.S. Co., 1948, 334 U.S. 219, 230, 68 S.Ct. 996, 1003, 92 L.Ed. 1328, where Mr. Justice Rutledge, speaking for the majority of the Court, listed the Alton case as one 'foredoomed to reversal', though the formal reversal has not yet taken place
 
 
 [12]
 Wicks v. Southern Pacific Co., Jensen v. Union Pacific R. Co., D.C.S.D.Cal.1954, 121 F.Supp. 454, at page 456
 
 
 [13]
 The cases cited are Bailey v. State of Alabama, 1911, 219 U.S. 219, 31 S.Ct. 145, 55 L.Ed. 191; Taylor v. State of Georgia, 1942, 315 U.S. 25, 62 S.Ct. 415, 86 L.Ed. 615; Pollock v. Williams, 1944, 322 U.S. 4, 64 S.Ct. 792, 88 L.Ed. 1095. In these cases state statutes imposed penal sanctions on a party who breached his written contract of employment. Cf. Peonage Cases, D.C.1903, 123 F. 671. Nor should the dissent of Mr. Justice Holmes in Bailey v. State of Alabama, supra, be overlooked for an illuminating comment on involuntary servitude taking the form of peonage. It should be noted that these cases arose under an Act of Congress pursuant to Section 2 of the Thirteenth Amendment, Act of March 2, 1867, c. 187, § 1, 14 Stat. 546, 42 U.S.C.A. § 1994