**BROTHERHOOD OF RAILROAD SHOP CRAFTS OF AMERICA, ROCK ISLAND SYSTEM, GRAND LODGE NO. 3, et al. v. LOWDEN et al.***

No. 1429.

Circuit Court of Appeals, Tenth Circuit.

Nov. 21, 1936.

James E. Smith, E. H. Hatcher, Frank H. McFarland, and Clayton M. Davis, all of Topeka, Kan., for appellants.

John Dickinson, Asst. Atty. Gen., Leo F. Tierney and Wendell Berge, Sp. Assts. to Atty. Gen., and Robert L. Stern, of Washington, D. C., for S. S. Alexander.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

The appeal in this case presents a challenge to the validity of that part of the fourth subdivision of section 2 of the Railway Labor Act, which forbids any carrier to deduct from the wages of employees dues, fees, assessments, or other contributions payable to labor organizations; or to collect or assist in the collection of such dues, fees, assessments, or other contributions. 45 U.S.C.A. § 152.

The company union of the Rock Island Railway System, an unincorporated association of machinists, boilermakers, blacksmiths, sheet-metal workers, electri-cians, carmen, power-plant employees, and shop laborers, was formed after the strike of·1922. The company and the union entered into a contract in 1925 which provided for the deduction of fees due the union from the pay of employees. The contract was modified in certain respects and renewed from time to time. The renewal in question was dated December 15, 1932. It obligated the company to deduct from the pay of every employee who was a member of the union the monthly dues of the union if the employee had requested in writing that such deductions be made and to pay such dues, less 3 per cent. retained to meet the cost of administration, to the union. The company made the deductions in accordance with the contract and regularly paid the dues to the union for about eighteen months. It wrote the union on July 7, 1934, calling attention to the provision contained in the recent amendment which forbade deduction of such dues and stated that none would be made from the date on which the amended act became effective.

The union and two of its officers as representatives of the members, instituted this action against the trustees of the company and the United States Attorney in Kansas. The purpose of the suit was to restrain the company from breaching the contract and to restrain the United States Attorney from instituting and. pressing prosecutions against the company for the deduction and payment of such dues. It was alleged that the provision of the statute was void because it violates the Fifth Amendment to the Constitution, and for that reason it did not warrant the termination of the contract and cannot support the institution of prosecutions. The company expressly set forth in its answer that it neither asserted the constitutionality nor the unconstitutionality of the statute, but that unless restrained by the court it would in obedience to the terms of the act, make no further deductions. The United States Attorney answered that the statute was valid; that under its terms the company was required to discontinue making deductions and therefore the injunction should be denied.

A temporary injunction was granted, but on final hearing it was dissolved and the bill dismissed. Association of Rock Island Mechanical and Power Plant Employees v. Lowden (D.C.) 15 F.Supp. 176. An order was subsequently entered on the same day which restrained the company

460

from discontinuing the making of deductions pending appeal.

The statute under consideration has its setting in a legislative background which originated many years prior to its enactment. The Transportation Act of 1920 was the conspicuous result of prolonged effort in Congress to enact legislation designed to facilitate the amicable settlement of disputes between railways and their employees. 41 Stat. 456. By Title 3 it created the Railroad Labor Board and provided for the determination of disputes of that kind. But the Board functioned merely as an arbitrator. It decisions were not compulsory and could not be enforced through legal process. Pennyslvania Railroad Company v. United States Labor Board, 261 U.S. 72, 43 S.Ct. 278, 67 L.Ed. 536; Pennsylvania Railroad System & Federation v. Pennsylvania Railroad Co., 267 U.S. 203, 45 S.Ct. 307, 69 L.Ed. 574. In an effort to overcome that inadequacy and to otherwise facilitate attainment of the desired objective, the Railway Labor Act of 1926 was enacted. 44 Stat. 577. It was entitled "An Act To provide for the prompt disposition of disputes between carriers and their employees, and for other purposes." Section 2 contained a declaration of duty on the part of carriers and their employees to exert every effort to make and maintain agreements in respect of rates of pay, working conditions and rules, and to settle all disputes growing out of such agreements or otherwise in order to avoid interruption of commerce or the operation of any carrier. It provided that carriers and employees should designate representatives to consider disputes and grievances, and that such representatives should hear any dispute or grievance upon notice to the parties in interest. Section 3 authorized the creation of Boards of Adjustment by mutual agreement of the parties and provided their duties. Section 4 created the Board of Mediation and subsequent sections detailed its functions and powers. Departing from the lack of compulsory effect of a decision rendered under the Transportation Act, it made provision for an enforceable award in arbitration proceedings. It was provided in section 9 (45 U.S.C.A. § 159) that an award having been acknowledged in the required manner should be filed in the clerk's office of the district court designated in the agreement to arbitrate; that such award should be conclusive on the parties as to the facts and merits of the controversy submitted for arbitration; and that unless a petition was filed within ten days to impeach it upon grounds specified in the act, the court should enter judgment upon it with final and conclusive effect.

The Act of June 21, 1934, amended the original act in many respects. 48 Stat. 1185. The first, second and third subdivisions of section 2 (45 U.S.C.A. § 152, subds. 1–3), in language akin to that found in the earlier statute, make it the duty of carriers and their employees to exert every effort to negotiate and maintain contracts dealing with rates of pay, working conditions and rules, and to settle disputes whether they arise out of such agreements or otherwise; provide that disputes shall be considered, and if possible decided with expedition in conference between representatives of the carriers and representatives of the employees; that representatives for that purpose shall be selected; and that no carrier shall, by interference, influence or coercion seek in any manner to prevent the selection of nonemployees to act as representatives of the employees. The fourth subdivision—the one assailed here—introduced new provisions into the legislative structure. It provides that employees shall have the right to organize and bargain collectively through representatives of their own choice, and it forbids a carrier, its officer, or agents to deduct from the wages of employees any dues, fees, assessments or other contributions payable to labor organizations or to assist in the collection of them. The tenth subdivision provides a penalty for the wilful failure or refusal to comply with the provisions of the fourth and other named subdivisions and makes it the duty of the United States Attorney to institute and prosecute proceedings for the violation of them.

The plenary power of Congress appropriately to protect and preserve the safety of interstate commerce is axiomatic. Const. art. 1, § 8, cl. 3. It may be exercised to avoid substantial injury no matter the source. It may be exerted to circumvent danger which arises from the conduct of those engaged in such commerce. Southern Ry. Co. v. United States, 222 U.S. 20, 32 S.Ct. 2, 56 L.Ed. 72. The plain objective of the Railway Labor Act is the amicable adjustment of disputes and in that way to avoid strikes with their harmful effect upon public interests. Freedom of choice in the selection of persons to represent the employees is essential to a

measure of success of the scheme. Complete confidence in such representatives after they have been selected and while they negotiate is equally essential. The deduction of dues payable to an organization from the wages of employees discloses to the carrier the affiliation of employees with unions. It discloses which of them belong to a particular union. It may disclose which belong to a favored union and which do not belong to any union. It creates a contact in relation to the organization, and even though it is indirect and somewhat remote, it may detract from an element which is essential to success. Furthermore, it proffers an opportunity for the carrier to take into consideration the status of employees in respect to unions in connection with matters of promotion, discipline or dismissal. It is readily conceivable that, moved by a desire to avoid the displeasure of the carrier with the possible loss of employment, employees may be influenced to join a particular union or dissuaded from withdrawing membership. Congress may well have determined that the system could be resolved into a subtle device through which to trench upon the freedom of self-government of employees and in that way impede the success of the plan. Its interdiction has a real and substantial relation to the protection of interstate commerce. Compare Texas & N. O. R. Co. v. Railway Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034; Virginia Ry. Co. v. System Federation (C.C.A.) 84 F. (2d) 641.

The fact that the parties here were bound by an existing contract at the time the act became effective is no basis upon which to invoke the due process clause of the Fifth Amendment. The privilege of contract is not unrestricted. The right to make contracts which relate to interstate commerce must be exercised subject to the paramount power of Congress to enact appropriate legislation touching the subject matter. Any other rule would proscribe Congress in the exercise of its constitutional prerogative to regulate commerce among the states. The contract here was subject to the exercise of that power. Addyston Pipe & Steel Co. v. United States, 175 U.S. 211, 231, 20 S.Ct. 96, 44 L.Ed. 136; Hudson Water Co. v. McCarter, 209 U.S. 349, 28 S.Ct. 529, 52 L.Ed. 828, 14 Ann.Cas. 560; Louisville & Nashville R. R. Co. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A.(N.S.) 671; Chicago, B. & Q. R. Co. v. McGuire, 219

U.S. 549, 31 S.Ct. 259, 55 L.Ed. 328; Norman v. Baltimore & O. R. Co., 294 U.S. 240, 308, 55 S.Ct. 407, 416, 79 L.Ed. 885, 95 A.L.R. 1352. Since the agreement is in conflict with the statute it must yield, although it was in effect at the time the act became effective.

The decree dismissing the bill is affirmed; and the trial court is directed to vacate the order of restraint pending appeal.