EDWIN COURTNEY HUDSON; LUTHER JEFFERSON DEVANE; WILLIAM RUSH CHISHOLM; JOE MARION TILLEY; HERBERT LEWIS DARDEN; THOMAS ALFRED SHEPARD, JR.; IRVIN ELDRIDGE RACKLEY; JOHN HUBERT SHANNON; CLARK WELDON POISSON; JOHN MONROE BINKLEY; FOR AND ON BEHALF OF THEMSELVES AND ALL OTHER EMPLOYEES OF ATLANTIC COAST LINE RAILROAD COMPANY IN NORTH CAROLINA WITH A COMMON OR GENERAL INTEREST, V. ATLANTIC COAST LINE RAILROAD COMPANY; INTERNATIONAL ASSOCIATION OF MACHINISTS; INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS & HELPERS OF AMERICA; INTERNATIONAL BROTHERHOOD OF BLACKSMITHS, DROP FORGERS AND HELPERS; SHEET METAL WORKERS INTERNATIONAL ASSOCIATION; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS; BROTHERHOOD OF RAILWAY CARMEN OF AMERICA; INTERNATIONAL BROTHERHOOD OF FIREMEN, OILERS, HELPERS, ROUNDHOUSE AND RAILWAY SHOP LABORERS; BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES; BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES; THE ORDER OF RAILROAD TELEGRAPHERS; BROTHERHOOD OF RAILROAD SIGNALMEN OF AMERICA; HOTEL AND RESTAURANT EMPLOYEES AND BARTENDERS INTERNATIONAL UNION; AMERICAN TRAIN DISPATCHERS ASSOCIATION.

(Filed 12 October, 1955.)

**1. Master and Servant § 1e—**

The common law rule that a closed shop or union shop agreement is valid, has been abrogated in this State by valid and constitutional statute

(G.S. 95-78, *et seq.*), providing that union membership shall not be required or forbidden as a condition of employment or continuation thereof, that no employer shall require, as a condition of employment, the payment of any dues or other fees to any labor union, and that any agreement between an employer and labor union requiring such membership or payments as a condition of employment shall be unlawful.

## 2. Constitutional Law §§ 8a, 10a—

The desirability or wisdom of legislation regulating collective bargaining and closed or union shops is a matter of public policy within the province of the General Assembly, and is not the concern of the courts.

## 3. Master and Servant § 1e—

State constitutional and legislative provisions relating to closed and union shops are valid except to the extent they conflict with an Act of Congress enacted within the orbit of Congressional authority.

## 4. Same: Courts § 12—

The Union Shop Amendment to the Railway Labor Act, 45 USCA sec. 152, Eleventh, does not invalidate Chapter 328, Session Laws of 1947, except to the extent that Congress, in enacting labor legislation related to interstate commerce, has pre-empted the field.

## 5. Same—

The Union Shop Amendment to the Railway Labor Act, 45 USCA sec. 152, Eleventh, expressly authorizes a carrier and labor union, duly designated and authorized to represent employees in accordance with the Act, to enter into a union shop agreement and exempts such union shop agreements from nullification by other statutes or laws, and the Federal statute is valid and supersedes Chapter 328, Session Laws of 1947, to the extent of conflict, and therefore a union shop agreement, complying in all respects with provisions of the Union Shop Amendment to the Railway Labor Act, is not rendered void by the State statute.

## 6. Constitutional Law § 30—

The Constitution of the United States, Article I, Section 8, Clause 3, confers on Congress the power to regulate commerce among the several states; and legislation enacted by Congress, within the power so granted, supersedes state statutes and laws in conflict therewith.

## 7. Master and Servant § 1e—

A proposed union shop agreement may not be challenged on the ground that it discriminates against plaintiff employees when such ground of attack is not supported by allegation.

## 8. Same—

A collective bargaining agent, duly designated and authorized to represent employees in accordance with the Railway Labor Act, is not required to ascertain by referendum the wishes of the employees of the craft or class it represents before making demands for a union shop agreement with the railroad employer. 29 USCA secs. 151 *et seq.*

**9. Constitutional Law §§ 8a, 10a: Master and Servant § 1e—**

The advisability of legislation requiring a referendum either prior or subsequent to the making of a union shop agreement under the Railway Labor Act and the promulgation of provisions in that Act differing from such provisions in the National Labor Relations Act, are determinable in the legislative sphere, and the task of the courts is merely to ascertain the intent of Congress as expressed in the statutes.

**10. Constitutional Law § 18—**

The classification of railroad employees under USCA 45 sec. 152, Eleventh (c), into operating and nonoperating employees, and exempting an operating employee under a union shop agreement from joining the particular union certified as collective bargaining agent for his craft provided such employee shall hold or acquire membership in any one of the National Labor organizations, is not an unreasonable discrimination in violation of the Fifth Amendment to the Federal Constitution.

**11. Appeal and Error § 401—**

The Supreme Court will not undertake to determine whether an Act of Congress is invalid because violative of the Constitution of the United States except on a ground definitely drawn into focus by plaintiffs' pleadings.

**12. Constitutional Law § 15½—**

The right to work is guaranteed to every person, but employment of one person by another is not guaranteed.

**13. Injunctions § 3—**

Injunctive relief will be granted only when irreparable injury is both real and immediate.

**14. Appeal and Error § 1—**

Even though an appeal may be decided upon procedural grounds, where the questions involved are of public importance, the Supreme Court may decide the appeal upon its merits.

BARNHILL, C. J., took no part in the consideration or decision of this case.
PARKER, J., dissents.

APPEAL by defendant unions from *Hubbard, Special Judge,* Special November Term, 1954, of NEW HANOVER.

Action to enjoin defendant unions and defendant carrier from entering into any union shop agreement whereby membership in a labor union is made a condition of employment of the named plaintiffs and fellow employees similarly situated.

On 23 April, 1953, when this action was commenced, a temporary order, restraining the negotiation of such an agreement and the calling of a strike in support of demands therefor, was signed; and this remained in effect until the final hearing.

Undisputed facts include the following:

Defendant carrier is a "carrier" as defined in the Railway Labor Act.

The thirteen (13) defendant unions are standard labor organizations, under the Railway Labor Act. They are the duly designated, authorized and recognized bargaining representatives of the nonoperating employees of defendant carrier in their respective crafts or classes. Since 1946, no election for bargaining representatives has been conducted by the National Mediation Board among the employees of any of these crafts nor has any request or demand for such an election or change in certification of bargaining representatives been made. The plaintiffs and defendant carrier fully recognize these unions and in no way challenge their right to negotiate collective bargaining agreements as to "rates of pay, rules, working conditions or any other matters which are not prohibited by law, . . ."

The ten (10) named plaintiffs bring this action in their own behalf and on behalf of "their fellow employees of a class whom they represent and who are similarly situated, (who) are either regular members of one or the other of the defendant labor organizations or are eligible for membership therein, and will be covered and bound by the terms of any agreement entered into between the aforesaid defendant labor organizations and the defendant Atlantic Coast Line."

The ten (10) named plaintiffs are members of or eligible for membership in five (5) of the thirteen (13) defendant unions, viz.:

Hudson is a member of the American Train Dispatchers Association. Binkley is a member of the Brotherhood of Railway Carmen of America. Rackley is a member of the Order of Railroad Telegraphers. DeVane is a member of, and Tilley, Shepard, Chisholm, Darden and Shannon are eligible for membership in, the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees. Poisson is eligible for membership in the Brotherhood of Maintenance of Way Employees.

As to Chisholm, the court found that, while eligible to become a member, his position was excepted "from the bulletin and displacement rules of the collective bargaining agreement"; that, on account thereof, he would not be required to join the union by the terms of the proposed union shop agreement; and the court made its conclusion of law that "Chisholm is not a proper party and the action should be dismissed as to him." As to Poisson, there is the further finding that he "is not employed by the Defendant Carrier, but retains seniority rights in the class represented by the Brotherhood of Maintenance of Way Employees."

The named plaintiffs' present rights under employment, on account of seniority or otherwise, are based upon collective bargaining agreements

concerning rates of pay, rules, and working conditions, entered into between defendant carrier and defendant unions.

From 5 February, 1951, defendant unions sought to obtain from defendant carrier a union shop agreement within the terms of the Union Shop Amendment (10 January, 1951) to the Railway Labor Act. Defendant carrier declined to enter into a union shop agreement. On 22 April, 1953, at 2:30 p.m., at a conference arranged for further negotiations, defendant unions presented to defendant carrier a proposed union shop agreement identical in substance to that previously made between defendant unions and the Pennsylvania Railroad and other carriers. Defendant unions, at such conference, made known their determination to continue negotiations until defendant carrier signed a union shop agreement such as that presented, or one embodying substantially the same terms, or until defendant carrier refused to do so; and that, in the event of such refusal, defendant unions would refer, by ballots previously prepared and printed, the question, to strike or not to strike for such union shop agreement, to their respective members. At the conference on the afternoon of 22 April, 1953, the discussion consisted largely of inquiries by the representative of defendant carrier as to the meaning of various provisions of the proposed union shop agreement. No agreement having been reached, the conference was recessed until the next day; but further discussion and negotiation were stayed by the restraining order obtained by plaintiffs.

The original complaint, upon which the restraining order was issued, attacked the proposed union shop agreement (1) as being in violation of the North Carolina statute, sometimes called the Right to Work Act, Session Laws of 1947, ch. 328, G.S. 95-78 *et seq.*, and (2) as being contrary to the expressed wishes and interests of a large number of employees of defendant carrier. No reference was made to the Union Shop Amendment to the Railway Labor Act nor was it alleged that the proposed union shop agreement would deny to any plaintiff any right guaranteed to him by the Constitution of the United States or by any federal statute.

On or about 7 May, 1953, the defendant unions removed the cause to the United States District Court for the Eastern District of North Carolina. Later, in the Superior Court of New Hanover County, an amended complaint, verified 30 September, 1953, was filed, in which plaintiffs alleged that such filing was "prior to the expiration of the period for the defendants to answer the original complaint (the period having been extended by the pendency of the Motion to Remand in the United States District Court)."

In their amended complaint, plaintiffs set forth their original allegations; and thereupon new matter, (1) that the efforts of defendants to

obtain a union shop agreement constitutes a breach of trust, being contrary to the expressed wishes and interests of a large number of employees, etc., and (2) that "the negotiations referred to constitute a serious threat to their individual property rights and liberties protected and guaranteed by and under the Constitution of the United States, the Constitution of the State of North Carolina, and the Federal and State laws and statutes." The only specification of denial of rights guaranteed by the Constitution of the United States, or by any federal statute, is that the Union Shop Amendment to the Railway Labor Act "is invalid, null and void as being in violation of the Fifth Amendment to the Constitution of the United States inasmuch as Congress in enacting the said amendment arbitrarily, discriminatorily, unreasonably and capriciously accorded less favorable treatment to nonoperating railroad employees with respect to the rights of individual employees in connection with union shop agreements than is accorded to other employees in occupations affecting commerce."

In answering the amended complaint, defendant unions aver that, upon the *second* removal of this cause to the District Court of the United States for the Eastern District of North Carolina, following the filing of the amended complaint, the plaintiffs filed in said court a motion to remand, stating in answer to the allegations of the removal petition, "It is denied that the plaintiffs based their claim for relief upon the Constitution and laws of the United States." Defendant unions further aver that, induced by plaintiffs' disclaimer as to reliance upon rights arising under the Constitution and laws of the United States, the District Court was induced to remand the cause, the second time, to the Superior Court of New Hanover County, upon the ground that, "The cause is one arising under the North Carolina statute and the plaintiffs must prevail, if at all, through the effectiveness of such statute."

Plaintiffs filed a reply, but no reference was made to the allegations of defendant unions summarized in the preceding paragraph. However, the record before us is barren as to evidence, documentary or otherwise, stipulations, findings of fact, etc., as to what occurred in the course of the two visits made by this cause to the District Court. The only data in this record advising us of these events is gleaned from the references in the pleadings as set out above.

Uncontradicted evidence is to the effect that defendant carrier had 19,026 employees; that prior to the conference arranged for the afternoon of 22 April, 1953, petitions expressing opposition to a union shop agreement were circulated among the employees; and that some 1,580 nonoperating employees signed such petitions. The total number of nonoperating employees is not shown. Nor, *except as stated below,*

does the evidence show the number of employees in the respective crafts, the number of union members as compared with the number of nonunion employees in the respective crafts, or the number within each craft who so expressed opposition to a union shop agreement. It does appear that in April, 1953, there were approximately 77 employees of the defendant carrier who were members of, *or eligible for membership in,* the American Train Dispatchers Association; and further, that 53 of these employees had expressed opposition to a union shop agreement. How many of the 77 or the 53 were union members is not shown.

Defendant carrier admits in substance the allegations of fact set forth in the amended complaint and concurs in plaintiffs' position as to the applicable law; and, since the North Carolina statute upon which plaintiffs rely creates a criminal offense, defendant carrier seeks an adjudication as to whether the making of such a union shop amendment would constitute a criminal act.

Defendant unions controvert certain allegations of fact, but contend primarily that a union shop agreement such as that proposed by them to defendant carrier, and their efforts to obtain such agreement, were in all respects legal and proper.

The union shop agreement proposed by defendant unions complies in all respects with the provisions of the Union Shop Amendment to the Railway Labor Act.

Upon waiver of jury trial, the court below, upon testimony and documentary evidence, made and set forth findings of fact and conclusions of law. Findings of fact, and evidence in support thereof, other than stated above, in so far as deemed relevant to decision, will be discussed in the opinion.

A final decree was entered, making "perpetual and permanent" the restraining order of 23 April, 1953, and adjudging that defendants pay the costs. Defendant unions, in apt time, filed exceptions to certain of the findings of fact, to all of the conclusions of law, and excepted to the final decree or judgment and appealed therefrom; and upon appeal they assign errors.

*L. P. McLendon, Thornton H. Brooks, and R. S. McClelland for plaintiffs, appellees.*

*M. V. Barnhill, Jr., and Alan A. Marshall for defendant Atlantic Coast Line Railroad Company, appellee.*

*Lester P. Schoene, Milton Kramer, and George Rountree, Jr., for defendant unions, appellants.*

BOBBITT, J. Is a union shop agreement, complying in all respects with the provisions of the Union Shop Amendment to the Railway

Labor Act, Act of Congress, Jan. 10, 1951, ch. 1220, 64 Stat. 1238, 45
USCA sec. 152, Eleventh, hereinafter called Union Shop Amendment,
void under the North Carolina statute, sometimes called the Right to
Work Act, Session Laws of 1947, ch. 328, G.S. 95-78 *et seq.*, hereinafter
called the 1947 Act or the North Carolina statute? This question, of
primary importance to decision, must be answered, "No." The reasons
are stated below.

A closed shop agreement, *a fortiori* a union shop agreement, has been
recognized as valid in most jurisdictions unless abrogated or restricted
by statute. 31 Am. Jur. 876, Labor, sec. 108, 1954 Cumulative Supple-
ment, p. 99; 56 C.J.S. 192, Master and Servant, sec. 28 (40). In the
absence of statute, Restatement of the Law of Torts, Vol. IV, sec. 788,
under the caption, "Closed Shop," gives the generally accepted rule as
follows: "Restriction of employment by an employer throughout his
business, or on specified jobs within it, to workers who are members of
a labor union, or of a particular union, is a proper object of concerted
action by his employees."

It was so decided in North Carolina in *S. v. Van Pelt*, 136 N.C. 633,
49 S.E. 177, 68 L.R.A. 760, 1 Ann. Cas. 495. The court's opinion by
*Connor, J.*, and the concurring opinion of *Clark, C. J.*, set forth cogently
the reasons in support of this view. As expressed succinctly by *Clark,
C. J.*: "It was not unlawful for the carpenters' union to try to induce
the prosecutor to employ none but members of their union, neither
illegal threats nor violence or other unlawful means being used; nor was
it forbidden by any law to publish the fact of his refusal and to ask
those friendly to their organization not to patronize him."

But the common law in North Carolina as so declared by this Court
in 1904 was abrogated by the 1947 Act of our General Assembly, which
declared the public policy of North Carolina to be "that the right of
persons to work shall not be denied or abridged on account of member-
ship or nonmembership in any labor union or labor organization or asso-
ciation." Specifically, the 1947 Act provides (1) that union membership
shall not be required or forbidden as a condition of employment or
continuation therein; (2) that no employer shall require, as a condition
of employment, the payment of dues or other fees to any labor union;
and (3) that any agreement between an employer and a labor union
requiring such membership or payments as a condition of employment
shall be unlawful. The 1947 Act, challenged as violative of provisions
of the Federal and State Constitutions, was held by this Court a valid
and constitutional exercise of legislative power by our General Assem-
bly. *S. v. Whitaker*, 228 N.C. 352, 45 S.E. 2d 860; *S. v. Bishop*, 228
N.C. 371, 45 S.E. 2d 858. See, also, *In re Port Publishing Co.*, 231 N.C.

395, 57 S.E. 2d 366, 14 A.L.R. 2d 842. In *S. v. Bishop, supra,* it was held that an act in violation of the statute was a misdemeanor.

The *Whitaker case* and a Nebraska case, involving substantially the same questions, were considered together, upon appeals to the Supreme Court of the United States; and the citation to the reported decision bears the caption of the Nebraska case. The decision of this Court was affirmed. *Lincoln Fed. L. U. v. Northwestern I. & M. Co.,* 335 U.S. 525, 69 S. Ct. 251, 93 L. Ed. 212. See also, *American Fed. of Labor v. American Sash & Door Co.,* 335 U.S. 538, 69 S. Ct. 258, 93 L. Ed. 222, 6 A.L.R. 2d 481.

The 1947 Act of our General Assembly embodied substantially the provisions of constitutional amendments and legislative enactments adopted in some seventeen states. Persuasive arguments were and are urged in favor of and against this legislation. It was not for this Court to say whether such legislation was desirable, appropriate or wise. Nor did this Court undertake to approve or disapprove the public policy of North Carolina as expressed in the 1947 Act. But it was determined, as stated by *Seawell, J.,* that it is for the legislative power to delineate "the area within which two factions with largely conflicting aims may wage their disputes without transgressing the public welfare."

In the *Whitaker case, Seawell, J.,* for this Court, and *Mr. Justice Black,* for the Supreme Court of the United States, reviewed the history of labor legislation and related court decisions. A restatement thereof is unnecessary. Suffice it to say that the conclusion reached was that state constitutional and legislative provisions, such as those embodied in our 1947 Act, are valid except to the extent they conflict with an Act of Congress enacted within the orbit of Congressional authority.

It is clear that the proposed union shop agreement is in direct conflict with the 1947 Act. Nothing else appearing, such agreement would be void. It is equally clear that the Union Shop Amendment does not invalidate the 1947 Act. Except to the extent Congress, in enacting labor legislation related to interstate commerce, has pre-empted the field, the 1947 Act is in full force and effect. *Local Union No. 10, A. F. of L. v. Graham,* 345 U.S. 192, 73 S. Ct. 585, 97 L. Ed. 946. Our attention, therefore, must turn to the Union Shop Amendment.

Upon adoption of the Railway Labor Act, 20 May, 1926, ch. 347, 44 Stat. 577, Congress "made a fresh start toward the peaceful settlement of labor disputes affecting railroads." *Virginia Ry. Co. v. System Federation No. 40,* 300 U.S. 515, 57 S. Ct. 592, 81 L. Ed. 789. This Act, as amended, is now codified as 45 USCA secs. 151 *et seq.* The basic principle underlying this Act is embodied in these provisions: "Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of

employees shall have the right to determine who shall be the representative of the craft or class for the purpose of this chapter." 45 USCA sec. 152, Fourth. In the case cited, the Supreme Court of the United States sustained the constitutionality of the Railway Labor Act, both under the commerce clause and as to the Fifth Amendment, in relation to the requirement that the carrier treat exclusively with the employees' duly chosen bargaining representative. As stated by *Mr. Justice Stone* (later *Chief Justice*): "The power of Congress over interstate commerce extends to such regulations of the relations of rail carriers to their employees as are reasonably calculated to prevent the interruption of interstate commerce by strikes and their attendant disorders. . . . It was for Congress to make the choice of the means by which its objective of securing the uninterrupted service of interstate railroads was to be secured, and its judgment, supported as it is by our long experience with industrial disputes, and the history of railroad labor relations, to which we have referred, is not open to review here."

As enacted in 1926, the Railway Labor Act contained no provision as to union shop agreements. But, as amended by Act of 21 June, 1934, 48 Stat. 1185, it was provided that no carrier should require any employee to join or not to join any labor organization as a condition of employment nor should any carrier deduct from the wages of employees any dues, etc., payable to labor organizations. 45 USCA sec. 152, Fourth and Fifth.

It is of interest to note that the 1934 amendments were supported by labor organizations because of the prevalence then of so-called "company-dominated" unions. The labor organizations sought to restrict the ban on union shop agreements to such local unions or associations, but Congress saw fit to make the provision apply to all unions. Report No. 2811, 7 August, 1950, Committee on Interstate and Foreign Commerce, 81st Congress, 2d Session, House Miscellaneous Reports, Vol. VI; Report No. 2263, 9 August, 1950, Committee on Labor and Public Welfare, 81st Congress, 2d Session, Senate Miscellaneous Reports. Vol. V. As intended, the 1934 legislation invalidated union shop agreements theretofore in effect. *Brotherhood of R. Shop Crafts v. Lowden,* 86 F. 2d 458, 108 A.L.R. 1128, *certiorari* denied 300 U.S. 659, 57 S. Ct. 435, 81 L. Ed. 868.

When the 1947 Act was adopted, the Railway Labor Act prohibited a union shop agreement between *a carrier* and a labor organization; and the 1947 Act prohibited such an agreement between *any employer* and a labor union. There was no conflict.

This continued until 10 January, 1951, when Congress enacted the Union Shop Amendment (45 USCA sec. 152, Eleventh), which, in pertinent part, provides:

"Eleventh. Notwithstanding any other provisions of this chapter, or *of any other statute or law* of the United States, or Territory thereof, or *of any State,* any carrier or carriers as defined in this chapter and a labor organization or labor organizations duly designated and authorized to represent employees in accordance with the requirements of this chapter shall be permitted—

" (a) to make agreements, requiring as a condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class: PROVIDED, That no such agreement shall require such condition of employment with respect to employees to whom membership is not available upon the same terms and conditions as are generally applicable to any other member or with respect to employees to whom membership was denied or terminated for any reason other than the failure of the employee to tender the periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership . . .

" (d) Any provisions in paragraphs Fourth and Fifth of this section in conflict herewith are to the extent of such conflict amended." (Italics added.)

Appellees contend that the effect of this Union Shop Amendment goes no further than to remove the ban previously placed on union shop agreements by 45 USCA sec. 152, Fourth and Fifth, thus disclaiming a national policy hostile to such agreements. Therefore, they contend, the federal prohibition gone, the validity of such agreements is determinable in relation to applicable state law. For this position they rely upon *Algoma P. & V. Co. v. Wisconsin Emp. Rel. Bd.,* 336 U.S. 301, 69 S. Ct. 584, 93 L. Ed. 691.

The *Algoma case* is distinguishable. Under a Wisconsin statute, a union shop agreement was declared an "unfair labor practice" unless affirmatively authorized by at least two-thirds of the employees voting secretly in a referendum. For reasons not material here, the employer entered into a union shop agreement that had not been so authorized. An employee was discharged for failure to pay union dues. Upon complaint to the Wisconsin Employment Relations Board, this action was held an "unfair labor practice," the employee was ordered reinstated and the employer required (1) to compensate him for the loss of pay, and (2) to cease and desist from giving effect to the maintenance-of-membership clause. The question presented was whether the controversy was in the exclusive jurisdiction of the National Labor Relations Board under the National Labor Relations Act. 29 USCA sec. 160 (a).

The cited statute (as worded when relevant to the *Algoma case*) empowered the National Labor Relations Board "as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in Section 158) affecting commerce. This power shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law or otherwise." It was held that this statute was applicable only to the unfair labor practices listed in Section 158; and the inquiry narrowed to Section 158 (3), which contained this proviso: "That nothing *in . . . this title or in any other statute of the United States,* shall preclude an employer from making an agreement with a labor organization . . . to require as a condition of employment membership therein, if such labor organization is the representative of the employees as provided in section 159 (a) of this title, in the appropriate collective bargaining unit covered by such agreement when made." (Italics added.) The Supreme Court of the United States affirmed the Wisconsin courts in holding that the Wisconsin statute was not superseded by the quoted provisions of the National Labor Relations Act. *Mr. Justice Frankfurter* said: "The short answer is that sec. 8 (3) (29 USCA 158 (3)) merely disclaims a national policy hostile to the closed shop or other forms of union-security agreement. This is the obvious inference to be drawn from *the choice of the words* 'nothing *in this Act . . .* or *in any other statute of the United States,*' and it is confirmed by legislative history." (Italics added.) After the decision of the Wisconsin board, and before consideration on appeal, the National Labor Relations Act was amended 23 June, 1947, 61 Stat. 151, 29 USCA sec. 164 (b), so as to provide expressly that "nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law." There is no such provision in the Railway Labor Act.

But the Union Shop Amendment does more than remove the previous ban on union shop agreements. While it does not require, it expressly *permits, i.e., authorizes,* a carrier and a labor union duly designated and authorized to represent employees in accordance with the Railway Labor Act to enter into such an agreement if they see fit to do so, "notwithstanding any other provisions of this Act, or *of any other statute* or *law . . . of any State, . . .*" (Italics added.) The decision in the *Algoma case* (1949) would seem to explain, at least in part, the choice of words used in the Union Shop Amendment (1951) to the Railway Labor Act, *i.e.,* the explicit reference to any *statute* or *law of any State.* In the legislative debates preceding the enactment of the Union Shop

Amendment, the state Right to Work statutes and constitutional provisions were much discussed; and it was made quite plain that a union shop agreement made under authority expressly granted would override conflicting state laws and that it was so intended. Congressional Record, Vol. 96, Part 12, 81st Congress, 2d Session, pp. 16262, 16270, 16280, 16323, 16327—and 16376, where the defeat in the Senate of the Holland amendment is recorded; pp. 17055, 17056, 17057, 17058, 17059—and 17061, where the defeat in the House of the motion to recommit is recorded. In short, the Union Shop Amendment, as stated by *Judge Learned Hand*, exempts union shop agreements "from nullification by other statutes or laws." *Otten v. Baltimore & O. R. Co.*, 205 F. 2d 58 (C.C.A. 2d 1953).

The Constitution of the United States, Article I, Section 8, Clause 3, confers on Congress the power to regulate commerce among the several states; and legislation enacted by Congress, within the power so granted, supersedes state statutes and laws in conflict therewith. *Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605, 47 S. Ct. 207, 71 L. Ed. 432.

The conclusion reached is that a union shop agreement, between a carrier and a labor organization duly designated, authorized and recognized as the bargaining representative of a craft or class of the carrier's employees, to the extent it embodies terms expressly sanctioned by the Union Shop Amendment is not invalid; for in such case and to such extent the federal statute supersedes the state statute. The union shop agreement, proposed by defendant unions, embodies terms sanctioned by the federal statute.

The conclusion stated is in accordance with that reached in the following cases: *International Ass'n of Machinists v. Sandsberry*, 277 S.W. 2d 776, Court of Civil Appeals of Texas, Amarillo, appeal now pending in the Supreme Court of Texas; *Moore v. Chesapeake & Ohio Ry. and Ward v. Seaboard Air Line Railroad Company*, Richmond (Va.) Hustings Court, 34 LRRM[*] 2667, appeal now pending in the Supreme Court of Appeals of Virginia; *In re Florida East Coast Ry. Co.*, U. S. District Court for Southern District of Florida, 32 LRRM[*] 2533; *Hanson v. Union Pacific R. R. Co.*, 160 Neb. 669, 71 N.W. 2d 526.

Appellees cite decisions, *e.g.*, *Steele v. Louisville & Nashville R. R. Co.*, 323 U.S. 192, 65 S. Ct. 226, 89 L. Ed. 173, to the effect that a collective bargaining agent must act fairly and impartially in behalf of all employees whom it represents, union members and nonmembers alike. Suffice it to say that there is no allegation or suggestion that the collective bargaining agreements, negotiated by defendant unions with defendant carrier, covering rates of pay, rules and working conditions, in

[*] Refers to Labor Relations Reference Manual, an unofficial reporter published by Bureau of National Affairs, Inc., Washington, D. C. Cases cited by reference to LRRM are not published in an official reporter. Hence, the original texts were obtained and examined.

any respect are discriminatory against plaintiffs or any other employees of the defendant carrier, union members or nonmembers.

Appellees further contend, and the court found as facts, that defendant unions, through their chief officers, acted arbitrarily and in disregard of the wishes of the employees of the respective crafts or classes. In last analysis, the only evidence supporting these findings is to the effect that the chief officers of defendant unions, notwithstanding known opposition of some employees to the making of a union shop agreement, made demands on defendant carrier for such agreement without ascertaining by referendum or otherwise the wishes of a majority of the employees within the respective crafts. Admittedly, defendant unions since 5 February, 1951, had been endeavoring to negotiate a union shop agreement with defendant carrier. The evidence dispels any suggestion that defendant unions' efforts to obtain a union shop agreement were conducted in secrecy; rather, the conclusion is inescapable that the opposing expressions by petition arose from the fact that the efforts of the bargaining agents were well known. The demands therefor, and the opposition to, a union shop agreement were well known and communicated to the defendant carrier prior to the conference on 22 April, 1953.

The inquiry narrows to this question: Must the bargaining agent, before making demands for a union shop agreement, first ascertain the wishes of the employees of the craft or class it represents with reference thereto and be governed by the wishes of the majority as expressed in a referendum or otherwise?

We are constrained to hold that such referendum was not required. By Act of 23 June, 1947, 61 Stat. 136 *et seq.*, Congress amended Section 8 (a) of the National Labor Relations Act (29 USCA sec. 151, *et seq.*) by providing in Section 8 (a) (3) thereof "that nothing in this Act, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization . . . to require as a condition of employment membership therein . . . if, following the most recent election held as provided in Section 9 (e) the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to authorize such labor organization to make such an agreement"; and amended Section 9 (e) so as to provide the procedure and conditions for the conduct of such referendum. But such requirement for a referendum as a condition precedent to the making of such an agreement was eliminated by Act of 22 October, 1951, 65 Stat. 601, now codified as 29 USCA sec. 158 (a) (3) and sec. 159 (e), so that a union shop agreement is permissible as provided unless "within one year preceding the effective date of such agreement," an election is called on application of "30 per centum or more of the employees in a

bargaining unit covered by such agreement" and "a majority of the employees eligible to vote in such election" have voted by secret ballot to rescind the authority of such labor organization to make such an agreement. The Senate and House reports relating to Senate Bill 1959, which became the Act of 22 October, 1951, explain the reason for the elimination of the precedent referendum in these words: "Such elections have imposed a heavy administrative burden on the Board, have involved a large expenditure of funds, and have almost always resulted in a vote favoring the union shop." U. S. Code Congressional and Administrative Service, 82nd Congress, First Session 1951, Vol. 2, p. 2381.

The significance of the foregoing is that the same Congress which eliminated the necessity for a referendum under the National Labor Relations Act passed the Union Shop Amendment (1951) to the Railway Labor Act; and the question of whether provision should be made for a referendum was considered but proposal for such requirement was rejected. House Report No. 2811, 7 August, 1950, on Bill Amending Railway Labor Act, *supra;* Congressional Record, Vol. 96, Part 12, 81st Congress, 2d Session, pp. 17055 and 17056. No provision for any referendum was incorporated in the Union Shop Amendment or appears elsewhere in the Railway Labor Act.

It must be concluded that the intent of Congress, as presently expressed in the Railway Labor Act, is that the employees in a collective bargaining unit, having selected their representative, authorized such representative to negotiate and act for them; and the Union Shop Amendment, by its terms, recognizes the negotiation of a union shop agreement as a proper subject for collective bargaining by the representative of such collective bargaining unit. The union membership requirement is obligatory under a union shop agreement only as long as the union so selected remains such bargaining agent. Should a majority of the collective bargaining unit desire to choose another bargaining agent, or none, the procedure therefor is available. 45 USCA sec. 152. The new representative so chosen is at liberty to reopen and renegotiate any collective bargaining agreement, eliminating the union shop provision. The injunction in this case has been in effect since 23 April, 1953. Plaintiffs and others similarly situated have had ample time to choose new representatives, if such was desired by a majority of the respective crafts. But no demand for a redetermination of bargaining representatives has been made since 1946. The conclusion reached is in accord with *Goodin v. Clinchfield R. R. Co.,* 125 F. Supp. 441 (E.D. Tenn. 1954) ; *Austin v. Southern Pac. Co.,* 50 Calif. App. 2d 292, 123 P. 2d 39.

It is not for us to review the arguments of considerable weight both for and against the wisdom of provisions requiring a referendum either prior or subsequent to the making of a union shop agreement. Nor is it for us to say that, in respect of union shop agreements, the provisions of the National Labor Relations Act are preferable to the provisions of the Railway Labor Act, or *vice versa.* Nor is it for us to say that the differentiating factors between carriers and industry generally, in the field of labor relations and otherwise, are not sufficient to warrant the differences between these two Acts. These matters are determinable in the legislative sphere. In the past, from time to time, experience has indicated the advisability of legislative changes. Further experience may indicate the advisability of further legislative changes. Much will depend upon the fairness and maturity of those clothed with the exercise of power as bargaining agents. Our task is one of statutory construction, *i.e.,* to ascertain the intent of Congress as presently expressed.

Appellees now contend, and the court below held, that "the agreement proposed on 22 April, 1953, by the Defendant Unions to the Defendant Carrier, if consummated, would deprive the plaintiffs, and members of the class whom they represent in this action, of individual property rights of value and liberties protected and guaranteed by and under the Constitution of the United States, the Constitution of the State of North Carolina, and federal and state laws, statutory and common." It is noteworthy that the court below did not indicate any particular provision of the Constitution of the United States it deemed violated.

Had the plaintiffs based their action upon rights arising under the Constitution of the United States, defendant unions were entitled to a removal thereof to the United States District Court for the Eastern District of North Carolina. It was subject to remand only upon the ground that plaintiffs predicated their position solely upon the North Carolina statute. *Allen v. Southern Ry. Co.,* 114 F. Supp. **72.** Since the record is silent as to what occurred in the District Court, we cannot accept as established fact the allegations of defendant unions that, when the amended complaint was before that court, plaintiffs affirmatively disclaimed reliance upon the Constitution and laws of the United States and asserted that they rested their case solely on the North Carolina statute. Even so, plaintiffs' attack upon the constitutionality of the Union Shop Amendment must be limited to the grounds of such attack alleged in their amended complaint.

As set forth in the statement of facts, the only specific constitutional ground on which plaintiffs attacked the Union Shop Amendment is that it unreasonably discriminates as between operating employees and nonoperating employees in violation of the Fifth Amendment. The basis for this position is the provision as to operating employees, 45 USCA

sec. 152, Eleventh (c), that, in a union shop agreement affecting operating employees, such an employee is exempt from joining the particular union certified as the collective bargaining agent for his craft "if said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services; and no agreement . . . shall provide for deductions from his wages for periodic dues, initiation fees, or assessments payable to any labor organization other than that in which he holds membership." The option thus given operating employees, but denied to nonoperating employees, is the basis for the charge of unreasonable discrimination in violation of the Fifth Amendment. As stated by *Wenke, J.,* speaking for the Supreme Court of Nebraska: "Classification of railroad employees into operating and nonoperating groups is traditional on railroads, and certainly is reasonable as a basis of classification for purposes of railroad legislation." We are in accord with the reasoning of the Nebraska court, based upon authorities cited, that the Union Shop Amendment is not subject to successful attack on the ground assigned by plaintiffs herein. *International Ass'n of Machinists v. Sandsberry, supra; Moore v. Chesapeake & Ohio Ry. and Ward v. Seaboard Air Line Railroad Company, supra; Hanson v. Union Pacific R. R. Co., supra.*

Admittedly, the Union Shop Amendment removes the North Carolina Act as a road block in the path of making a union shop agreement drawn in compliance with its terms. Even so, the Act of Congress does not compel or require a union shop. As pointed out by *Judge Learned Hand,* it is "permissive," not "self-operative." On the ground that the first ten amendments to the Constitution of the United States protect against congressional action and are not limitations upon the acts of private parties, *Corrigan v. Buckley,* 271 U.S. 323, 46 S. Ct. 521, 70 L. Ed. 969, it has been held, as against challenge on constitutional grounds not alleged herein, that a railroad employee's constitutional rights are not infringed by the Union Shop Amendment. *Otten v. Baltimore & O. R. Co., supra; Wicks v. Southern Pac. Co.,* 121 F. Supp. 454 (S.D. Calif.). Too, *Senn v. Tile Layers Protective Union,* 301 U.S. 468, 57 S. Ct. 857, 81 L. Ed. 1229, is persuasive authority for the view that the Act of Congress authorizing a union shop agreement does not violate the Fifth Amendment. The laws of Wisconsin permitted a union to endeavor to induce an employer, not only to unionize his shop but to refrain from working in his business with his own hands, although none of his employees was a member of the union. *Mr. Justice Brandeis* says: "Whether it was wise for the State to permit the unions to do so

is a question of its public policy—not our concern. The Fourteenth Amendment does not prohibit it."

True, the Nebraska case cited reached the conclusion that the Union Shop Amendment violated the Fifth Amendment. This conclusion was based on the view that the initiation fees, dues and assessments employees may be required to pay under a permitted union shop agreement may be used for purposes such employees do not approve, *i.e.,* the amount thereof is not limited to a proportionate share of the cost of obtaining the benefits they receive from collective bargaining agreements negotiated in their behalf. In this aspect, the Nebraska court regarded the Union Shop Amendment as a denial of due process.

"But we do not wish to express an opinion upon it until the question is brought directly before us," to use the words of *Battle, J.,* in *S. v. John,* 30 N.C. 330. In the case before us, the Union Shop Amendment is not challenged as unconstitutional on that ground. Moreover, there is neither allegation nor evidence that the initiation fees, dues or assessments of any of the defendant unions are unreasonable or disproportionate to the amount necessary, in the phrase of *Mr. Justice Holmes,* "to establish the equality of position between the parties in which liberty of contract begins." Dissenting opinion, *Coppage v. Kansas,* 236 U.S. 1, 35 S. Ct. 240, 59 L. Ed. 441, L.R.A. 1915C, 960. Suffice it to say, we will not undertake to determine whether an Act of Congress is invalid because violative of the Constitution of the United States except on a ground definitely drawn into focus by plaintiffs' pleadings.

Various documents, consisting of membership application blanks, constitutions and by-laws, etc., of defendant unions were identified by stipulation. In their brief, plaintiffs assert that employees will be required, on penalty of the loss of their jobs, to subscribe to statements of belief, to take oaths, to make pledges, etc., offensive to them and contrary to their honest convictions; that they will be required to choose between loss of employment by defendant carrier and stultifying themselves by false statements and involuntary commitments; and that this constitutes a denial of their individual liberties and property rights under the Constitution of the United States. Here, again, plaintiffs attempt to proceed on a new course. For the complaint does not allege nor does the evidence show that any of the named plaintiffs made any reference to any of these documents as the basis of his objection to the proposed union shop agreement. Nor does the complaint challenge the constitutionality of the Union Shop Amendment on any ground related to such documents. We defer consideration of such matters until a specific factual situation is presented by allegation and evidence. A union may waive any requirement that is offensive to the scruples of a member or prospective member. Moreover, both under

the Union Shop Amendment and the explicit provisions of the proposed union shop agreement, if membership is *denied* or *terminated* for any reason other than failure to pay or tender the periodic dues, initiation fees and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership, such denial or termination of membership is not a ground for discharge. In this connection, see *Otten v. Baltimore & O. R. Co., supra; Wicks v. Southern Pac. Co., supra;* also, the committee reports to the 81st Congress, 2d Session, *supra.*

Beyond question, the right to work is guaranteed to every person. But employment of one person by another is not so guaranteed. In the absence of limitation by legislation, an employee's rights depend upon the terms of his employment contract; and it can be provided that the employee might be discharged for any reason or none. The original concept was such that the Supreme Court of the United States struck down as unconstitutional both federal and state *statutes* (not the contract provision) which made unlawful a provision in an employment contract by which an employee would be discharged if he joined a union. *Adair v. U. S.,* 208 U.S. 161, 28 S. Ct. 277, 52 L. Ed. 436, 13 Ann. Cas. 764; *Coppage v. Kansas, supra.* The ground assigned therefor was what the court then considered the constitutional right of liberty of contract both of employer and employee. Under that concept, the parties were considered *free* to negotiate that an employee be discharged for union membership, nonmembership or other ground. Later, this view was rejected, *Lincoln Fed. L. U. v. Northwestern I. & M. Co., supra,* and cases cited therein. For it became apparent, as *Mr. Justice Holmes* had observed, that real liberty of contract exists only when there is substantial equality of position between the parties. Legislation was then recognized as valid which took from no person the right to work but defined limitations within which the right of freedom to contract as to employment might be exercised. As of now, Congress has defined such limitations as to employees of carriers in interstate commerce. Except as defined by Congress within the orbit of its authority, the North Carolina statute controls. To the extent they are in irreconcilable conflict, the Act of Congress prevails. The wisdom of the legislation, either of Congress or of the General Assembly, is not our concern.

A well established rule of this Court is that injunctive relief will be granted only when irreparable injury is both *real* and *immediate. Wilcher v. Sharpe,* 236 N.C. 308, 72 S.E. 2d 662, and cases cited.

Defendant carrier has signed no union shop agreement. It has manifested no desire or intent to do so. If it should sign such agreement, the nonmember plaintiffs and other nonmembers would have sixty (60)

days within which to bring suit to restrain the enforcement thereof. If defendant carrier refuses or fails to sign such agreement, no strike can be called unless and until at least a majority of union members of each respective craft vote therefor. If the opposition to the union shop principle is as strong as plaintiffs contend, it would appear likely that in some, if not all, of the crafts represented by defendant unions, the majority vote of the union members of defendant carrier would ban the calling of a strike for a union shop agreement. In any event, it would seem that plaintiffs are somewhat removed from real and immediate irreparable injury; and that, if the apprehended events occur, they would have ample time to invoke the injunction procedures of the court.

Attention is called to the fact that had defendant carrier entered into a union shop agreement with defendant unions, such as that proposed, and if the action were one to restrain the discharge of plaintiffs, there is strong authority that the validity and interpretation of the union shop agreement would be matters for determination in the first instance by the National Railroad Adjustment Board before resort to the courts. *Alabaugh v. Baltimore and Ohio Railroad Company,* 222 F. 2d 861 (CCA 4th), in which *Parker, Chief Judge,* reviews the cases dealing with this subject.

Do those plaintiffs who are presently members of a defendant union have such interest as to entitle them to attack the attempted negotiation of a union shop agreement? Are the eight defendant unions in which none of the named plaintiffs is either a member or eligible for membership entitled to a dismissal of the action on the ground that a plaintiff may not sue on behalf of a class to which he does not belong? Since they do not go to the entire case, we refrain from discussing these serious questions.

Conceding that there are strong reasons why the judgment might be vacated on procedural grounds, *i.e.,* a failure of plaintiffs to show real and immediate irreparable injury, we have decided to deal with the basic questions here presented; for the matter is one of public importance and both defendant carrier and defendant unions would seem entitled to know whether, under the pleadings and evidence herein, the making of a union shop agreement, in compliance with the provisions of the Union Shop Amendment, would be deemed by this Court invalid and a criminal offense under the North Carolina statute.

For the reasons stated, the judgment of the court below is reversed and the restraining order is dissolved.

Reversed.

BARNHILL, C. J., took no part in the consideration or decision of this case.

PARKER, J., dissents.