S. S. KRESGE COMPANY v. TRAVIS H. TOMLINSON, Mayor of the City of Raleigh, North Carolina, and GEORGE B. CHERRY, EARL H. HOS-TETLER, SEBY B. JONES, WILLIAM M. LAW, CLARENCE E. LIGHT-NER, WILLIAM H. WORTH, Members of the City Council for the City of Raleigh, North Carolina, and THOMAS W. DAVIS, Chief of Police of the City of Raleigh, North Carolina

AND

ARLAN'S DEPT. STORE OF RALEIGH, INC. v. TRAVIS H. TOMLINSON, Mayor of the City of Raleigh, North Carolina, and GEORGE B. CHERRY, EARL H. HOSTETLER, SEBY B. JONES, WILLIAM M. LAW, CLARENCE E. LIGHTNER, WILLIAM H. WORTH, Members of the City Council for the City of Raleigh, North Carolina, and THOMAS W. DAVIS, Chief of Police of the City of Raleigh, North Carolina

No. 524

(Filed 21 January 1969)

1. **Constitutional Law § 4; Injunctions § 5— action to restrain en-forcement of ordinance — constitutional issues**

Notwithstanding the general rule that the constitutionality of a criminal statute or ordinance may not be challenged in an action to enjoin its en-forcement, a well-established exception permits such action when injunc-tive relief is essential to the protection of property rights and the rights of persons against injuries otherwise irremediable.

2. **Constitutional Law § 11— legislative exercise of the police power**

The General Assembly, exercising the police power of the State, may legislate for the protection of the public health, safety, morals and gen-eral welfare of the people.

**3. Constitutional Law § 14;  Sundays and Holidays——  police power —— Sunday observance law**

Sunday observance statutes and municipal ordinances derive their validity from the police power of the State.

**4. Municipal Corporations § 32——  Raleigh  Sunday  observance  ordinance**

Legislative authority for the adoption of the City of Raleigh Sunday observance ordinance is conferred by G.S. 160-52 and G.S. 160-200(6), (7), and (10), and by "The Charter of the City of Raleigh," Session Laws of 1949, Chapter 1184, §§ 21 and 22.

**5. Constitutional Law § 14;  Municipal Corporations § 32;  Sundays and Holidays——  Sunday observance ordinance — constitutionality**

Municipal ordinance prohibiting the sale of merchandise within the city on Sunday but exempting from the ordinance merchants selling certain commodities having a relationship to the public health and welfare and the observance of Sunday as a day of rest and recreation *is held* not violative of Article I, Section 17, of the Constitution of North Carolina, and of the due process clause of the Fourteenth Amendment to the Constitution of the United States.

**6. Constitutional Law § 14;  Municipal Corporations § 32——  Sunday observance law — reasonableness of classification**

In municipal ordinance prohibiting the sale of merchandise within the city on Sunday and exempting from the ordinance merchants selling certain commodities relating to observance of Sunday as a day of rest and recreation, classification which prohibits the sale on Sunday of "sporting goods and toys" but which authorizes the sale of live bait is not unreasonable, arbitrary or discriminatory.

**7. Constitutional Law § 22——  religious liberty**

The First Amendment, as made applicable to the states by the Fourteenth, commands that a state shall make no law respecting an establishment of religion or prohibiting the free exercise thereof.

**8. Constitutional Law § 22;  Municipal Corporations § 32——  establishment of religion — Sunday observance ordinance**

Municipal ordinance prohibiting the sale of goods in the city on Sunday is not unconstitutional as violative of the "Establishment Clause" of the First Amendment of the U. S. Constitution on the ground that the ordinance permits, *inter alia*, the sale of "Christmas greenery" on Sunday during the month of December, since the decorations included within the term "Christmas greenery" are used indiscriminately by all segments of the community without reference to religious affiliation.

**9. Constitutional Law § 22;  Municipal Corporations § 32——  establishment of religion — Sunday observance ordinance**

The fact that municipal Sunday observance ordinance which prohibits generally the sale of goods in the city on Sunday does allow grocery stores and fruit stands to remain open on Sunday except for the hours between 10:00 a.m. and 12:00 noon does not constitute sufficient basis for declar-

ing the ordinance unconstitutional as violative of the "Establishment Clause" of the First Amendment of the U. S. Constitution, since the aid, if any, to the Christian religion resulting from the enforcement of the two-hour closing provision would seem minimal and remote.

**10. Municipal Corporations § 8— construction of ordinance — motives of city council**

The courts will not inquire into the motives which prompted a city council to enact an ordinance valid on its face.

**11. Injunctions § 5— standing to enjoin enforcement of ordinance**

Where retailers' own stores are operated on Sunday between the hours of 1:00 p.m. and 7:00 p.m., retailers may not attack Sunday observance ordinance on the ground that one provision of the ordinance requires grocery stores and fruit stands to cease operations between 10:00 a.m. and 12:00 noon on Sunday.

**12. Constitutional Law § 22; Municipal Corporations § 32— establishment of religion — Sunday observance ordinance**

The fact that municipal Sunday observance ordinances may contain traces of language suggestive of a relationship between the ordinance and the Christian religion does not constitute sufficient ground to declare the ordinance unconstitutional as violative of the "Establishment Clause" of the First Amendment to the U. S. Constitution.

APPEALS by plaintiffs from judgments entered in chambers by *Bailey, Resident Judge,* on July 19, 1968, in actions pending in WAKE Superior Court, certified, pursuant to G.S. 7A-31, for review by the Supreme Court before determination by the Court of Appeals.

Plaintiffs, S. S. Kresge Company, a Michigan corporation, and Arlan's Dept. Store of Raleigh, Inc., a North Carolina corporation, instituted these separate actions to enjoin the enforcement of the ordinance adopted by the City Council of Raleigh, North Carolina, on June 3, 1968, now Section 15-43 of the Code of the City of Raleigh, which provides:

"AN ORDINANCE TO PROVIDE FOR THE DUE OBSERVANCE OF SUNDAY.

"WHEREAS, the power to enact ordinances requiring the observance of Sunday as a day of rest has been delegated to the City of Raleigh by G.S. 160-52, G.S. 160-200(6), (7) and (10); and by subsection 17 of the section 22 of its Charter, (Chapter 1184, Session Laws of North Carolina 1949); and

"WHEREAS, the City Council of the City of Raleigh hereby finds and declares that the carrying on of unrestricted business activities on Sunday in the City of Raleigh does not result in the due observance of Sunday as a day of rest, and is contrary to the public health, the general welfare, safety, and morals of the citizens, and

"WHEREAS, the City Council of the City of Raleigh hereby finds and declares that there exists a clear and present need to restrict the carrying on of business activities on Sunday in the City of Raleigh in order to provide for the due observance of Sunday as a day of rest, and to protect and promote the public health, the general welfare, safety and morals of the citizens.

"Now, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF RALEIGH, NORTH CAROLINA:

"Section 1. Section 15-43 of the Code of the City of Raleigh, North Carolina, is hereby amended by rewriting said Section to read as follows:

Section 15-43.

"(a)   It shall be unlawful for any person to sell, offer or expose for sale any goods, wares or merchandise in the city on Sunday, (nor shall any store, shop, warehouse or any other place of business in which goods, wares or merchandise are kept for sale, be kept open between 12:00 midnight Saturday and 12:00 midnight Sunday,) unless such store, shop, warehouse or other place of business is expressly allowed to open and sell goods under the provisions of this chapter; provided, however, that notwithstanding any other provisions of this chapter, on Sunday no such store, shop, warehouse or other place of business shall sell, offer or expose for sale to the general public any of the following:

    (1)   Clothing and wearing apparel;

    (2)   Clothing accessories;

    (3)   Furniture, housewares, home, business, or office furnishings;

    (4)   Household, business or office appliances;

    (5)   Hardware, tools, paints, building and lumber supply materials;

    (6)   Jewelry, silverware, watches, clocks, luggage, musical instruments or recordings.

    (7)   Sporting goods and toys.

"(b)   Each separate sale or offer to sell shall constitute a separate offense.

"(c)   Bootblacks.   Bootblack stands may keep open on Sundays.

"(d)   Sale of Christmas greenery.   During the month of December of each year, Christmas greenery may be sold on Sunday within the city.

"(e)   Cigar and tobacco stores and newsstands.  Cigar and tobacco stores or stands and newsstands may keep open on Sunday for the sale of tobacco, tobacco products, papers and periodicals and accessories, together with soft drinks, ice cream, candy and cakes.

"(f)   Drug Stores.  Drug stores having a licensed pharmacist may keep open on Sunday for all purposes, except items enumerated in Section 15-43(a), including the operation of soda fountains located therein.

"(g)   Exhibition of games, sports, moving pictures, etc.

(1)   Except as otherwise provided in this section, it shall be unlawful for any person to engage in or present on Sunday any exhibition of play, game, sport or any moving picture or theatrical exhibition for which any admission is charged the witnessing public.

(2)   It shall be lawful for any person to engage in or present any exhibition of moving pictures, baseball, football, basketball, golf, tennis, or dog and horse shows on Sundays, between the hours of 12:00 noon and 12:00 midnight for which any admission is charged the witnessing public. It shall also be lawful to continue to its conclusion a sports event or motion picture commenced before twelve midnight on Saturday night. No tickets shall be sold or taken up on Sunday during the prohibited hours for any such exhibition.

(3)   Peanuts, popcorn, chewing gum, soft drinks, ice cream, candy, cakes, wrapped sandwiches and tobacco may be sold on Sundays at all lawful exhibitions allowed by Subsection (2) immediately above.

"(h)   Sale of fruits and melons.  Stands for the sale of fruits and melons may remain open on Sundays during the hours of 7:00 to 10:00 a.m. and from 12:00 noon to 12:00 midnight and such establishments shall remain closed on Sunday except during these hours.

"(i)   Garages and filling stations.  Public garages and filling stations may be kept open for the hiring and storage of automobiles and for the sale of gasoline, oils, parts and accessories, soft drinks, ice cream, candy, cakes and tobaccos at all hours.

"(j)   Grocery stores and curb markets.  Grocery stores and curb markets may remain open on Sunday during the hours of 7:00 to 10:00 a.m. and from 12:00 noon to 12:00 midnight, for the sale of any items not otherwise prohibited by law. All such establishments, including those selling confectionery items, shall remain closed on Sunday except during these hours.

"(k)   Hotels, boardinghouses, restaurants, etc.

(1)   Hotels, boardinghouses, cafes, restaurants, confectioneries and weiner stands are permitted to keep open on Sundays for their usual business, including the sale of food, cigars, cigarettes, tobacco and soft drinks.

(2)   It shall be unlawful for any person to conduct or keep open any restaurant or cafe within the city on Sunday, except such as are also conducted as restaurants or cafes on other days of the week.

(3)   A confectionery, as used in this section, shall mean a place where sweets are sold, such as ice cream, candies, cakes, soft drinks, doughnuts and wrapped sandwiches.

"(l)   Ice manufactures and dealers.

(1)   Manufactures and dealers of ice alone may keep open for the sale of ice at all times, but delivery of ice other than at the plant or premises of such manufacturer or dealer is hereby forbidden, except as hereinafter stated.

(2)   Ice may be delivered to any hospital at any time, or to ice refrigerated railroad cars containing perishable fruits or other perishable products.

(3)   Ice may be delivered to dwellings or apartments on Sunday under the following conditions only.

(a)   A special order for the amount desired is made by the customer for each delivery.

(b)   Drivers of vehicles delivering such special orders shall not accept orders while en route, and shall not peddle, sell or deliver ice to any person, unless the person has first made the special order at the office or plant of the ice dealer. Deliveries shall be made quietly without ringing of bells or other unnecessary noise.

(4)   Any person delivering ice on Sunday, except in accordance with this section shall be guilty of a violation of this code.

"(m)   Ice Cream manufacturers, dairies and creameries. Manufacturers of ice cream, dairies and creameries may keep open on Sunday and at all times for the sale of ice cream, milk, butter and frozen dairy products.

"(n)   Newspapers and magazines. Nothing in this chapter shall be construed to prohibit the publication of newspapers or the sale of newspapers or magazines by newsstands or newsboys in and about the streets.

"(o)  The sale of live bait such as worms, minnows, crickets and shrimp may be sold on Sunday.

"(p)  Barbershops.  It shall be unlawful for any barbershop in the city to open for business on Sunday.

"(q)  If any section, subsection, sentence, clause, or phrase of this ordinance is for any reason held to be invalid, such decision shall not affect the validity of the remaining portions of this ordinance. The City Council hereby declares that it would have passed this ordinance and each section, subsection, clause, and phrase thereof, irrespective of the fact that any one (1) or more sections, subsections, sentences, clauses, or phrases be declared invalid.

"(r)  All ordinances or parts thereof in conflict with the provisions of this ordinance are hereby repealed. Sections 15-44 and 15-45 of the Code are expressly repealed.

"(s)  This ordinance shall become effective July 1, 1968."

In each case, defendants are the Mayor, the members of the City Council, and the Chief of Police, of the City of Raleigh.

In Paragraph IV of its complaint, plaintiff Kresge alleged: "That the plaintiff operates a retail store in the City of Raleigh, North Carolina, selling clothing and wearing apparel, clothing accessories, furniture, housewares, home and office furnishings, household and office appliances, hardware, tools, paints, building and lumber supply materials, jewelry, silverware, watches, clocks, luggage, musical instruments and recordings, sporting goods, toys, 'Christmas greenery,' tobacco products, newspapers and periodicals, soft drinks, ice cream, candies, cakes, doughnuts, wrapped sandwiches, *fruits, melons and general grocery items*." Paragraph IV of plaintiff Arlan's complaint is identical with this exception: The italicized words are omitted. In lieu thereof the paragraph closes with the words, "and other food items."

Kresge alleged it opened its store in the City of Raleigh during the month of August, 1964. Arlan alleged it opened its store in the City of Raleigh during the month of August, 1967. Each alleged that, since the opening date, it "has operated its store during the hours of 10:00 a.m. until 10:00 p.m. on Monday through Saturday, and during the hours of 1:00 p.m. through 7:00 p.m. on Sunday."

Except as noted, the allegations of the complaints, including the prayers for relief, are identical or substantially the same.

Plaintiffs alleged that, for reasons considered in the opinion, the challenged ordinance is unconstitutional and therefore void; that

enforcement of its provisions would cause plaintiffs to suffer "substantial direct economic injury"; that plaintiffs have no adequate remedy at law; and that, unless defendants are restrained, plaintiffs will suffer irreparable injury and damage.

Simultaneously with the institution of these actions, Judge Bailey issued a temporary restraining order and an order to show cause returnable before him on July 19, 1968. At the hearing on July 19, 1968, defendants demurred *ore tenus* to each complaint. The grounds of demurrer are set forth in detail in Judge Bailey's judgments. Being of the opinion the demurrers should be sustained, Judge Bailey, in each case, entered a judgment providing: "IT IS ORDERED, ADJUDGED AND DECREED that said demurrer be and the same is hereby sustained, the action dismissed and the temporary restraining order issued in this cause is hereby dissolved, effective 22 July, 1968." In each case, the plaintiff excepted to the judgment and appealed therefrom; and, upon appeal, each plaintiff assigns as error the court's ruling and judgment.

*Jordan, Morris & Hoke and Eugene Hafer for plaintiff appellants.*
*Donald L. Smith for defendant appellees.*

BOBBITT, J.

Plaintiffs alleged the ordinance prohibits the sale of the great majority of the items of merchandise they would otherwise sell during the period they operate their stores on Sunday, namely, from 1:00 p.m. through 7:00 p.m. Their factual allegations, which are admitted for the purpose of testing the sufficiency of the complaints, are deemed sufficient to support their conclusion that enforcement of the ordinance would cause them to suffer "substantial direct economic injury."

[1] Notwithstanding the *general* rule that the constitutionality of a statute or ordinance purporting to create a criminal offense may not be challenged in an action to enjoin its enforcement, a well-established exception permits such action when injunctive relief is essential to the protection of property rights and the rights of persons against injuries otherwise irremediable. *Surplus Store, Inc. v. Hunter*, 257 N.C. 206, 214, 125 S.E. 2d 764, 770; *Surplus Co. v. Pleasants, Sheriff*, 264 N.C. 650, 653, 142 S.E. 2d 697, 700.

[2-4] The General Assembly, exercising the police power of the State, may legislate for the protection of the public health, safety, morals and general welfare of the people. Sunday observance stat-

utes and municipal ordinances derive their validity from this sphere of legislative power. *State v. McGee,* 237 N.C. 633, 75 S.E. 2d 783, and cases cited; *State v. Chestnutt,* 241 N.C. 401, 85 S.E. 2d 297; *Surplus Co. v. Pleasants, Sheriff, supra.* Legislative authority for the adoption of the ordinance *sub judice* was conferred by the general statutes codified as G.S. 160-52 and G.S. 160-200(6), (7) and (10), and by "The Charter of the City of Raleigh," Session Laws of 1949, Chapter 1184, Sections 21 and 22.

The question presented by this appeal is whether the ordinance is *unconstitutional* on the grounds on which plaintiffs attack it. *Hudson v. R. R.,* 242 N.C. 650, 667, 89 S.E. 2d 441, 453; *Surplus Store, Inc. v. Hunter, supra; Sykes v. Clayton, Comr. of Revenue,* 274 N.C. 398, 402, 163 S.E. 2d 775, 778.

The Raleigh ordinance is similar to the Charlotte ordinance considered in *Clark's Charlotte, Inc. v. Hunter,* 261 N.C. 222, 134 S.E. 2d 364, and is identical, except in the respects noted below, to the Winston-Salem ordinance considered in *Charles Stores v. Tucker,* 263 N.C. 710, 140 S.E. 2d 370. The validity of the Charlotte and Winston-Salem ordinances was upheld by this Court when attacked as violative of the law of the land provision of Article I, Section 17, of the Constitution of North Carolina, and of the due process clause of the Fourteenth Amendment to the Constitution of the United States.

**[5, 6]**     The Raleigh ordinance differs from the Winston-Salem ordinance considered in *Charles Stores v. Tucker, supra,* in that, in addition to its comprehensive prohibitions, it includes the sale of "Sporting goods and toys." Section 15-43(a), Subsection 7, in the list of specifically prohibited items, and in Section 15-43(o), it specifically authorizes the sale on Sunday "of *live* bait such as worms, minnows, crickets and shrimp." (Our italics.) These differences, to which attention is called in plaintiffs' briefs, do not bear significantly on the constitutionality of the ordinance. The classification of "Sporting goods and toys" as prohibited items and of *live* bait as permitted items cannot be considered unreasonable, arbitrary or discriminatory. Hence, on authority of *Clark's Charlotte, Inc. v. Hunter, supra,* and *Charles Stores v. Tucker, supra,* we hold the provisions of the Raleigh ordinance are not unreasonable, arbitrary, or discriminatory as applied to plaintiffs. The reasons underlying decision in these authoritative cases are set forth respectively in the opinions of Parker, C.J., and of Sharp, J. Repetition is unnecessary and would be inappropriate. Hence, the validity of the ordinance is sustained as against plaintiffs' attack thereon as violative of Article I, Sec-

tion 17, of the Constitution of North Carolina, and of the due process clause of the Fourteenth Amendment to the Constitution of the United States.

Plaintiffs assert, as their primary ground of attack, that the Raleigh ordinance is unconstitutional as violative of the First Amendment to the Constitution of the United States.

[7]    "The First Amendment, as made applicable to the States by the Fourteenth, *Murdock v. Pennsylvania,* 319 U.S. 105, 87 L. ed 1292, 63 S. Ct. 870, 882, 891, 146 A.L.R. 81, commands that a state 'shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . .'" *Everson v. Board of Education,* 330 U.S. 1, 91 L. ed. 711, 67 S. Ct. 504, 168 A.L.R. 1392. Accord: *Illinois ex rel. McCollum v. Board of Education,* 333 U.S. 203, 92 L. ed. 649, 68 S. Ct. 461, 2 A.L.R. 2d 1338; *In re Williams,* 269 N.C. 68, 78, 152 S.E. 2d 317, 325, and cases there cited.

The two quoted clauses of the First Amendment are referred to generally as the "Establishment Clause," and the "Free Exercise Clause," respectively. Plaintiffs base their attack solely on the "Establishment Clause."

In *McGowan v. Maryland,* 366 U.S. 420, 6 L. ed. 2d 393, 81 S. Ct. 1101, the Supreme Court of the United States affirmed the Court of Appeals of Maryland which, in *McGowan v. State,* 220 Md. 117, 151 A. 2d 156, had affirmed the conviction of employees of a discount department store for making sales on a Sunday in violation of the Maryland Sunday closing laws. The Maryland statutes were attacked on the ground, *inter alia,* they violated "the guarantee of separation of church and state in that the statutes are laws respecting an establishment of religion contrary to the First Amendment, made applicable to the States by the Fourteenth Amendment." 366 U.S. at 430, 6 L. ed. 2d at 401, 81 S. Ct. at 1107. Since enforcement thereof caused the defendants to suffer "direct economic injury," it was held that the defendants had "standing to complain that the statutes are laws respecting an establishment of religion," 366 U.S. at 431, 6 L. ed. 2d at 402, 81 S. Ct. at 1108, but that the challenged Maryland Sunday closing laws were not invalid as violative of the "Establishment Clause" or otherwise. Accord: *Two Guys v. McGinley,* 366 U.S. 582, 6 L. ed. 2d 551, 81 S. Ct. 1135, reh. den. 368 U.S. 869, 7 L. ed. 2d 69, 82 S. Ct. 21.

In the present action, defendants concede plaintiffs have sufficient standing to challenge the Raleigh ordinance as violative of the "Establishment Clause." However, defendants contend that plain-

tiffs' challenge of the Raleigh ordinance as violative of the "Establishment Clause" is without merit.

In *McGowan,* Mr. Chief Justice Warren quotes with approval this excerpt from the opinion of Mr. Justice Black in *Everson:* "The 'establishment of religion' clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance. No tax in any amount, large or small, can be levied to support any religious activities or institution, whatever they may be called, or whatever form they may adopt to teach or practice religion. Neither a state nor the Federal Government can, openly or secretly, participate in the affairs of any religious organizations or groups and vice versa. In the words of Jefferson, the clause against establishment of religion by law was intended to erect 'a wall of separation between church and State.' " 366 U.S. at 443, 6 L. ed. 2d at 409, 81 S. Ct. at 1114.

[8, 9]    Plaintiffs' attack on the Raleigh ordinance as violative of the "Establishment Clause" is based on the allegations of Paragraphs VIII and IX of the complaints, *viz.:*

"VIII.    That the said ordinance permits the sale of 'Christmas greenery' during the month of December, which is the month in which the Christmas holiday is celebrated by persons of the Christian religion; that at all other times of the year 'Christmas greenery' may not be sold on Sunday by plaintiff and others similarly situated; that this requirement has no relationship to the setting aside of Sunday as a day of rest but was enacted to aid the observance of a Christian tradition.

"IX.    *That plaintiff and others similarly situated may operate a grocery store and stand for the sale of fruits and melons* on Sunday except during the hours of 10:00 a.m. until 12:00 noon, which are hours traditionally and generally set aside for worship services by persons of the Christian religion; that the requirement for closing during these hours has no relationship to the setting aside of Sunday as a day of rest but was enacted to aid the observance of Sunday as a day of Christian worship." (Our italics.) (Quoted from Kresge's complaint. Paragraph IX of Arlan's complaint is the same with this exception: In lieu of the italicized words, Arlan alleged:

"That the ordinance complained of specifically allows certain sales and activities . . .")

The City Council, in the preamble, declares the Raleigh ordinance was adopted because there existed "a clear and present need to restrict the carrying on of business activities on Sunday in the City of Raleigh in order to provide for the due observance of Sunday as a day of rest, and to protect and promote the public health, the general welfare, safety and morals of the citizens." In general, the Raleigh ordinance, like the Winston-Salem ordinance, exempts "those businesses rendering essential services or furnishing products considered as necessary for health or as contributing to the recreational aspect of Sunday." *Charles Stores v. Tucker, supra.*

Although recognizing *the predecessors* of the Maryland Sunday laws under consideration were "undeniably religious in origin," Mr. Chief Justice Warren, in *McGowan,* states:

"In light of the evolution of our Sunday Closing Laws through the centuries, and of their more or less recent emphasis upon secular consideration, it is not difficult to discern that as presently written and administered, most of them, at least, are of a secular rather than of a religious character, and that presently they bear no relationship to establishment of religion as those words are used in the Constitution of the United States.

"Throughout this century and longer, both the federal and state governments have oriented their activities very largely toward improvement of the health, safety, recreation and general well-being of our citizens. Numerous laws affecting public health, safety factors in industry, laws affecting hours and conditions of labor of women and children, week-end diversion at parks and beaches, and cultural activities of various kinds, now point the way toward the good life for all. Sunday Closing Laws, like those before us, have become part and parcel of this great governmental concern wholly apart from their original purposes or connotations. The present purpose and effect of most of them is to provide a uniform day of rest for all citizens; the fact that this day is Sunday, a day of particular significance for the dominant Christian sects, does not bar the State from achieving its secular goals. To say that the States cannot prescribe Sunday as a day of rest for these purposes solely because centuries ago such laws had their genesis in religion would give a constitutional interpretation of hostility to the public welfare rather than one of mere separation of church and State." 366 U.S. at 444-445, 6 L. ed. 2d at 410, 81 S. Ct. at 1115.

**[10]**    In *Clark's v. West,* 268 N.C. 527, 151 S.E. 2d 5, involving a Greenville Sunday ordinance identical in all material respects to the ordinance considered in *Charles Stores v. Tucker, supra,* it was held that the courts, in respect of an ordinance valid on its face, will not inquire into the motives which prompted the city council to enact it. Plaintiffs contend the Raleigh ordinance, notwithstanding the *declared* purpose for which the City Council enacted it, discloses on its face "a use of the State's coercive power to aid religion, namely, the Christian religion." The contention is based upon two incidental and secondary features of the ordinance, to wit: (1) That "Christmas greenery" may not be sold on Sunday except during the month of December; and (2) that grocery stores and stands for the sale of fruits and melons may be operated during *all hours* on Sunday except between 10:00 a.m. and 12:00 noon.

**[8]**    The first feature to which plaintiffs call our attention is the permitted sale of "Christmas greenery" on Sunday during the month of December. Apparently, the term "Christmas greenery" is intended to identify evergreen trees, holly, mistletoe, and other recently cut and perishable trees and shrubs, which are used as decorations on streets, in stores, in homes, and generally throughout the community during the Christmas season. Obviously, such greenery would be offered for sale only during the month of December. While the word "Christmas," standing alone, has a distinctive religious connotation, the decorations included within the term "Christmas greenery" are used indiscriminately by all segments of the community — especially merchants — without reference to a specific religious affiliation or any religious affiliation. Suffice to say, this small particular cannot be considered a sufficient basis for declaring the ordinance unconstitutional as violative of the "Establishment Clause" of the First Amendment to the Constitution of the United States.

**[9, 11]**    The second feature to which plaintiffs call our attention, namely, the provision purporting to require grocery stores and stands for the sale of fruits and melons to cease operations between 10:00 a.m. and 12:00 noon, appears to have been brought forward from earlier ordinances. These, previously considered and upheld by this Court, were not attacked as violative of the "Establishment Clause," *e.g.,* the Winston-Salem ordinance considered in *Charles Stores v. Tucker, supra.* At the outset we note that the complaints disclose plaintiffs would suffer no economic injury on account of the enforcement of this provision. Since their stores are operated on Sunday between the hours of 1:00 p.m. and 7:00 p.m., this provision imposes no restraint on plaintiffs and is not presently subject

to attack by plaintiffs in an action to obtain injunctive relief. *Charles Stores v. Tucker, supra,* 263 N.C. at 717, 140 S.E. 2d at 375, and cases cited.

[12]　The aid, if any, to the Christian religion resulting from the enforcement of the two-hour closing provision referred to in the preceding paragraph would seem minimal and remote. As Mr. Chief Justice Warren said in *Two Guys v. McGinley, supra,* with reference to the Pennsylvania statutes, which contained provisions having greater religious connotations than any in the Raleigh ordinance: "It would seem that those traces that have remained (that is, language with religious connotations) are simply the result of legislative oversight in failing to remove them." *Id.* at 366 U.S. at 594, 6 L. ed. 2d at 559, 81 S. Ct. at 1141.

In the opinion in *McGowan,* Mr. Chief Justice Warren stated: "The title of the major series of sections of the Maryland Code dealing with Sunday closing — Art. 27, §§ 492-534C — is 'Sabbath Breaking'; § 492 proscribes work or bodily labor on the 'Lord's day,' and forbids persons to 'profane the Lord's day' by gaming, fishing et cetera; § 522 refers to Sunday as the 'Sabbath day.' As has been mentioned above, many of the exempted Sunday activities in the various localities of the State may only be conducted during the afternoon and late evening; most Christian church services, of course, are held on Sunday morning and early Sunday evening. Finally, as previously noted, certain localities do not permit the allowed Sunday activities to be carried on within one hundred yards of any church where religious services are being held. This is the totality of the evidence of religious purpose which may be gleaned from the face of the present statute and from its operative effect." 366 U.S. at 445, 6 L. ed. 2d at 410, 81 S. Ct. at 1115. Suffice to say, the Maryland statutes which were upheld in *McGowan* against attack as violative of the "Establishment Clause" contain more provisions than the Raleigh ordinance suggestive of a relationship between the Sunday closing laws and the Christian religion.

In accord with *McGowan* and *Two Guys,* we hold that "neither the statute's (ordinance's) purpose nor its effect is religious." *Two Guys v. McGinley, supra,* 366 U.S. at 598, 6 L. ed. 2d at 561, 81 S. Ct. at 1143.

The demurrers were properly sustained; and, since the ordinance, which is incorporated in the complaints, discloses that plaintiffs have no cause of action for injunctive relief on the grounds alleged, the actions were properly dismissed.

Affirmed.